Parker, J.
The clause in the will of Elizabeth Fulgham under which James Bedgood her executor claims the whole residue of her estate is in the following words: “ I do hereby appoint James Bedgood my executor to this my last will and testament, and that he shall receive the balance of my estate, if any.”
There is no difficulty about the import of the word receive, whether we look to other clauses in the will, where that word is used as synonymous with give, or to the parol testimony in the cause, proving that no resulting trust was intended to the next of kin. Whatever Bedgood takes, he is to take as his own property. This is plain, and has scarcely been contested.
*368 The only serious question that can be made in the case, is whether, taking the words of the will in connexion with the facts proved or admitted, the testatrix has made a valid bequest of the money left in the house (amounting to the sum of 2978 dollars) to the appellee.
On the words themselves, no doubt can arise. In relation to the balance of the estate, they are general. The testatrix could have employed no words more significant to give the whole residue of her property, than those she has used. The word estate (as lord Mansfield said in Urry v. Harvey, 5 Burr. 2638.) “ carries every thing, unless tied down by particular expressions and the balance if any, comprehends all. These words are not equivocal of themselves, nor doubtful and ambiguous, and therefore I think it is not proper to resort to parol averments or extrinsic circumstances, to control or to restrain them. The difficulty here is suggested by the fact appearing aliunde, that she had a considerable sum of-money in the house; and hence it is inferred that she could not intend to bequeath it by words implying, as it is said, a doubt whether she would leave any balance. The wmrds, however, are plain and comprehensive ; and being so, they should not be limited by such considerations.
This would be putting something in the will that did not previously stand there, and drawing inferences of intention, not from the words of the will, but from extrinsic proof. The cases in which this may be done are accurately stated by judge Cabell in Puller's ex'or v. Puller, 3 Rand. 90. and are referred to, more at large, by Powell in his treatise on devises, pp. 338 and 341.— but there is no case, not even that of Cole v. Rawlinson, 1 Salk. 234. or Fonnereau v. Poyntz, 1 Bro. C. C. 472. there mentioned, which would justify us in restraining the general, unequivocal, and clear words of this will, to a small part of the balance of the testatrix’s property, instead of the whole.
*369 If, however, wo look to the circumstances of the testatrix, and to the facts stated in the deposition and the answers (which the complainants admit to be true, by not replying to them) there is nothing which ought to induce us to say that the, testatrix died intestate as to the sum of money left in the house, or that she did not intend to give it to the executor to whom the law formerly gave the whole undisposed of residuum. She had no near relations. The complainants are distant connexions, towards whom she seems to have entertained some prejudice, for she has not once mentioned them in her will. The appellee was a near neighbour, and had been in the habit of attending to her business; and it is more likely that she would have wished him to have the residue of her property, than distant relations, to one of whom, at least, she expressed the strongest aversion. The witness who was present when she made her will, has no doubt she intended the whole residue to go to Bedgood; and certainly she could have used no words more effectually excluding her next of kin, than words giving ail the balance of her estate, if any, to her executor.
It is said, however, that the testatrix could not have intended to pass this money, but something necessarily of small amount, of which there might probably be nothing left. This is mere matter of conjecture founded on the words “ if any,” connected with the proof that she probably had, at the time of making her will, a large sum of money by her. But those words might have been added, because she thought she might spend the greater part or the whole of her money before her death: or because she wished to conceal the fact of her having so large a sum in the house : or because, at the moment, she did not advert to it: or for some other reason, which was satisfactory to her, but unknown to us. In this uncertainty, is it not better to abide by the plain *370 construction of the words, than to rely on circumstances in themselves equivocal and doubtful ?
It is very evident that the testatrix did not mean to die intestate as to any portion of her property. No one does, who makes a residuary bequest. And if she did not mean to die intestate, all her residuary estate will pass by force of the words, although she might have had no reference to this money. There are many cases to shew that property not intended to pass under a residuary clause, as where it is given to charitable uses void by the statutes of mortmain (Durour v. Motteux, 1 Ves. sen. 320.) or where the legacy lapses, or where the specific legatee cannot claim in consequence of fraud practised on the testator (Kennell v. Abbott, 4 Ves. 803.) does yet go to the residuary legatee. The cases of Cambridge v. Rous, 8 Ves. 14. Bland v. Lamb, 5 Madd. 412. and several others cited in 2 Roper on Legacies, ch. 24. § 1. are of the same character. Sir John Leach, in the case of Bland v. Lamb, observed that “the question is not what the testator bad in his contemplation, but what the words he has used will embrace according to their ordinary signification, which must prevail unless qualified by other expressions in the instrumentand lord Eldon, in afterwards affirming the decree, remarks in allusion to this rule, that it has sometimes operated directly contrary to the intention of the testator, but notwithstanding, has been allowed to prevail. I know that a testator may, by the terms of the will, so circumscribe and confine the general residuary clause, as that the residuary legatee shall be a specific instead of a general legatee. This may be done by a clause particularly enumerating certain things, and then using general terms in the same clause, and in the disposition to the ■same person. This is what has been known as the doctrine of ejusdem generis, established in the cases of Cook v. Oakley, 1 P. Wms. 302. Trafford v. Berrige, 1 Eq. Cas. Abr. 201. Timewell v. Perkins, 2 Atk. 103. and *371 Minor’s ex’x v. Dabney, 3 Rand. 191.—to which may be added the more modern cases of Fleming v. Burrows, 1 Russ. 276. and Arnold v. Arnold, 8 Cond. Eng. Ch. Rep. 40. explaining, and, as I think, limiting that doctrine. Taking it, however, as broadly as it is stated in Minor’s ex’x v. Dabney, it does not apply to this case; first, because money ivas given in the previous clauses, and upon the doctrine of ejusdem generis, ought to pass in the residuum ; and secondly, because that doctrine does not permit a reference to be made to other clauses of the will, giving specific property to different persons. The clause in this will in favour of Bedgood contains no enumeration, but gives all the balance, if any. Taken per se, it passes every thing; and unless the words had been restrained by something in the context, they cannot be limited.
I am of opinion that the decree should be affirmed.
Brockenbrough, J.
The only difficulty in this case arises from the use of the words “if any,” in the residuary clause. They indicate a doubt in the mind of the testatrix whether there would be any balance of her estate over and above her debts, funeral expenses, and legacies. I was at first strongly inclined to think that from the expression of this doubt by the testatrix, she had in contemplation only the disposition of her furniture, and other little property in possession, independently of the large sum of nearly 3000 dollars which was found in her house at her death, and that this sum did not pass to the residuary legatee. But my first impression is removed.
To what time does the doubt in the mind of the testatrix apply? Not to the time of making the will, but to the time of her death. She could not doubt that there was a balance, and a large balance, when she made the will. She knew there was a large sum of money then in her house. Her debts were small, and *372 her legacies trivial. The words “ if any” were used to express a doubt whether there would be any balance at the time of her death. She was then in good health, she might live a long time, and might spend the money; or, as she lived alone in the world, she might lose it by pilfering or plunder.
Understanding these words in that sense, the question is, whether the words of the residuary clause will pass the money to Bedgood. “ He shall receive the balance of my estate.” This is a very comprehensive word, and carries every kind of personal estate, money, slaves or furniture, unless restricted by the plain meaning of the testator. ' The argument of the appellants’ counsel is, that the bequest of the balance must be restricted to things ejusdem generis with those specifically bequeathed. I am disposed to think that the rule laid down by judge Coalter, in Minor's ex'x v. Dabney, 8 Rand. 203. is correct. “ If a testator gives to A. specific legacies, and also to B. C. and D. and in a general clause gives the residue to A. he is undoubtedly residuary legatee of every thing not perfectly disposed of. But when certain things are left to A. and in the same clause the residue is given to him, it is either a general residuary clause to him, of every thing not perfectly disposed of, or to be construed and restrained to things of the like kind, according as a sound and just construction of the whole will demands.” The decision in that case was undoubtedly correct. The bequest was df " my books, medicine and shop furniture, and all the estate not before devised, including my gig and saddle horses.” The judgment was that lots in a town (including the lot on which the shop was erected) and slaves, did not pass, but that the legacy should be restricted to property ejusdem generis. That case will not apply to this, because there is no specific legacy to Bed-good, either in that or any other clause of the will, with which to connect the residuary legacy, so as to make the latter of the like kind with the former.
*373 Bat if it were right to make a farther restriction of the legacy, to things of the same kind with those given to the other legatees by the other clauses of the will, still it will not apply to this case, because this residuary legacy is ejusdem generis with those of the other legatees. The testatrix bequeathed money to three several persons ; namely, to the freedman Kit, to Aswell for the support of the slave Harry, and to Sarah Cathen; and the residuary clause to Bedgood bequeaths money to him.
I am for affirming the decree.
Cabell, J. concurred in affirming the decree.
Brooke, J.
I shall say very little on this case. Parol evidence is admissible to prove the person intended by the devise, the condition of the testator, or the amount and condition of the property on which the will is to operate. Nothing in all this contradicts or varies the meaning of the words of the will. It only explains the object and subject to which the words of the will were intended to apply. Thus, in the case of Harris v. The Bishop of Lincoln, 2 P. Wms. 136. parol evidence was held admissible to ascertain which of two persons named John, and equally answering the description in the will, was meant by the testator to take under the devise. So as to the property intended to be bequeathed : in Fonnereau v. Poyntz, parol evidence was let in to prove that the testator intended to give specific sums of money, and not annuities. Now, in the case before us, if parol evidence is let in to prove what the testatrix said at the making of the will, there can be no doubt that she did not mean the residuary clause to comprehend the large sum of money found in her house at her death; and whether she feared to let it be known that she had so much money, or not, is immaterial. When asked how she meant to dispose of the balance of her property af *374 ter the payment of the legacies, she said, there could not be more than 30 or 40 dollars, and that she intended to give to her executor (who was then writing the will) for his trouble; on which he drew the residuary clause, and inserted the words if any; which words certainly had reference to the 30 or 40 dollars, and not to the sum found in the house. They could not refer to the probability that the testatrix was to live long enough to spend the whole of it. Her age, her circumstances, in short, every thing discountenances the suggestion. By this exposition, the words in the residuary clause are not changed in their meaning. “ The balance of my estate, if any,” it is true would comprehend any property coming to her, whether she knew of it or not: but the parol evidence of what she said when the executor was writing the will, if admissible, as I think it is on authority, confines the clause to the property in her contemplation at the time, and negatives the idea that she intended to give more than expressed by her.
Very little aid is to be gotten from cases in the construction of wills. In Minor's ex'x v. Dabney, I cited none, because the words in the residuary clause were peculiar; and though as broad as the words in the .clause before us, they were held not to embrace the whole of the estate not before devised.
I am of opinion that the decree should be reversed.
Tucker, P.
I have seen no reason to change the opinion which I gave in this case on the first argument; but as it has been so much discussed, and as I am so unfortunate as to differ with some of my brethren, it may not be improper that I should endeavour to present, in a clearer manner than before, the considerations which have led me to this result. In doing so, I shall altogether avoid most of the topics discussed and the cases cited in argument, which appear to me irrelevant; and confine myself to the single question of the true construction of the residuary clause in the will before us.
*375 I begin with the postulate, that as the law gives the power to dispose of property by will at the discretion of the testator, his intention must always govern in the construction of his last will and testament; and I will add, that if that intention be consistent with the rules of law, it will be carried into effect, whether the will be draughted with technical accuracy or not. The consequence of these principles seems to be, that in the construction of wills which carry evidence upon their face that they have been the work of ignorant testators, and not of experienced and enlightened scriveners, adjudicated cases can afford us little aid. As has been truly said by the great luminary of this court, “adjudged cases upon wills have more frequently been produced to disappoint than to illustrate the intention.” It is better that we should look to the situation and circumstances of the testator, to the probable intelligence of the draughtsman of the will, to the sense in which he, if a common man, unskilled in technical niceties, has probably used the words of the will, than incur the hazard of defeating his legitimate intention, by affixing to them the meaning a professional man would give them. In these views, I found myself not only upon the principles established by the common law for centuries, but also upon the decisions of this court itself. Kennon v. M'Roberts & ux. 1 Wash. 99. 100. Shermer v. Shermer's ex'ors, Id. 271.
Wilh respect to the facts of the case, I shall proceed upon the assumption that the sum of 2978 dollars was in the testatrix’s possession at the date of the will. If this matter were doubtful, I should deem it important to send the cause back to have it ascertained. But in truth the case has proceeded upon that hypothesis, and the answer of the defendant impliedly admits it, since he declares that in his opinion one great reason for the remark attributed to her, “ was to conceal from the world the amount of money she had.”
*376 The case, then, stands thus. A single woman (said in the argument to be an old lady) has by her upwards of 2900 dollars, together with a very small personal property, estimated (exclusive of two slaves) at about 200 dollars. One. of the slaves is emancipated, and has a legacy of 50 dollars : the other is bequeathed to a friend, with 100 dollars for his support. A buffet, two trunks, three bed covers, and twenty dollars constitute the bequests of the will, which concludes with the following clause : “I appoint James Bedgood my executor, and that he shall receive the balance of my estate, if any.” Under this clause, he claims the 2978 dollars. On the other hand, the testatrix’s next of kin claim it. These are Nancy Miars, and the descendants of three other stocks, to wit, Nancy Powell, James Cathen and William Cathen. With the first, the defendant tells us she was at variance : but it seems that she was not so with the rest. Thus circumstanced, she sends for Bedgood to draw her will; and at the time it was preparing, she said, in speaking of the balance of her estate, that it would not exceed thirty or forty dollars.
The first question which presents itself in the case, is as to the admissibility of this declaration. It cannot be denied, that in construing the will, we must look to the subject upon which it is to operate ; and evidence is therefore proper to prove the value of the personal estate of the testatrix, and the fact of the possession by her of this 2978 dollars. But this is not all. The declaration of the testatrix, as to her supposed estate, is also evidence to explain the ambiguity as to her intention in relation to the bequest of the sum in question, which is disclosed by the proof of the fact of its existence. She is in possession of a large sum in money, and yet says, she wills the balance of her estate, if any, to her executor. Now, if she looked upon the money as comprehended by the word estate, she could have no doubt that there would be a balance to the amount of *377 nearly 3000 dollars. When, therefore, she speaks in those doubtful terms “ the balance of my estate, if any,” we are forced to doubt whether, by the word estate, she did mean to comprehend her money. To explain this doubt, the evidence is introduced of her declaration that “ there might be 30 or 40 dollars, and that the man might have it who attended to her business.” Such evidence is not in conflict with the statute of frauds; at least that part of it which relates to her estimate of the probable balance of her estate. The cases clearly shew its admissibility. I might content myself with referring to the case of Langham v. Sanford, 17 Ves. 435. S. C. 19 Ves. 641. where parol evidence was admitted of what passed at the time the will was written ; and although declarations of the testator prior and subsequent to the making of the will weighed little, his declarations when it was made were deemed important. I will add, however, that all the cases decide that in the construction of wills, we may and must look to the circumstances of the testator, of his estate, and of his connexions; and this is distinctly admitted and acted upon in the case of Puller’s ex’ors v. Puller, 3 Rand. 83. See also Bucher’s Case, Goul. 99. Reat v. Lee, 2 Eq. Ca. Abr. 298. Fonnereau v. Poyntz, 1 Bro. C. C. 472. Dyose v. Dyose, 1 P. Wins. 305. Duke of Rutland v. Dutchess of Rutland, 2 P. Wms. 210. 1 Ball & Beatty 449. 481. 6 Eng. C. L. Rep. 244. 245. 246. Goodinge v. Goodinge, 1 Ves. sen. 231. Shelton’s ex’ors v. Shelton, 1 Wash. 56. Kennon v. M’Roberts & ux. Id. 99. 100. Guthrie v. Guthrie, 1 Call 14. 3 Binney 484. 2 Maule & Sel. 448. In Goodinge v. Goodinge, evidence was admitted to prove that the testator knew he had poor relations living in a distant county. The knowledge of the testator of such facts, therefore, seems admissible, and the fact of such knowledge is best, derived from his own declarations. So, too, with respect to the property of the testator. If, at the time of making the will, he makes *378 a declaration in reference to his property, such declaration may be resorted to, to explain a latent ambiguity in his will. Thus, in the present case, in looking to the estate which is the subject of the will, and considering it in reference to the expressions “the balance of my estate, if any,” a doubt at once suggests itself whether the testatrix did or did not design to embrace, under the term estate, this large sum of money. To explain this doubt, we have evidence of the testatrix’s declaration that the balance of her estate would not exceed 30 or 40 dollars; whence the inference is irresistible, that she did not mean to comprehend the 2978 dollars. This evidence seems to me beyond all exception.
Taking, then, the evidence of the testatrix’s declaration, let me proceed to state some of the considerations which induce a conviction on my mind, that she never designed this sum of money for Bedgood.
1. Because, without any assignable reason, she thus cuts off those united to her by the ties of blood, with only one out of seven of whom is it pretended she had any disagreement; and the allegation as to that one is not proved. It is said, indeed, she has shewn her disregard of them by not mentioning them; but that is begging the question, if, as I suppose, she designed to leave the 2978 dollars to the legal distribution among them.
2. Because she has given her property to a stranger, who had no claims upon her, except that she named him her executor; and it is not conceivable that she would give 2978 dollars as a compensation for administering 200 dollars.
3. Because her declaration that there might be abalance of her estate of 30 or 40 dollars, and that her executor might have it, clearly negatives the idea of her designing to give him this large sum. If those words had been inserted in the will, they would have excluded all doubt. They ought not to have less weight, upon the proofs in the cause.
*379 4. Because that declaration clearly shews, that the testatrix used the word estate in a more limited sense than it has in legal parlance ; for as, on the one hand, she must have known that she had this money, so, on the other, if she had looked upon it as part of her estate, she could have had no doubt that the balance would have been 3000 dollars instead of 30. Now, the word estate, however comprehensive, is often limited and re-, stricted in its signification. Thus in Minor's ex'x v. Dabney, the testator clearly thought his gig and saddle horses were not embraced by the words “ all the estate not before devisedand the court decided that those words did not comprehend undevised lands, slaves and other personal estate. So also is it with other general expressions : they are susceptible of limitation according to the plain intention. Thus, in Trafford v. Berrige, the bequest was of all the testator’s goods, chattels, household stuff, furniture and other things in the house. Yet £265. in ready money in the house was not included under the words goods, chattels or other things. So in Timewell v. Perkins, the devise was of plate, jewels, linen, household goods and coach horses, and every other thing whatsoever or wheresoever. Yet goldsmiths’ notes and bank bills were held not to pass under this sweeping expression. And truly I think they were rightly rejected. For money, particularly where it is in large sums and composes the bulk of the testator’s property, cannot reasonably be supposed to be thrown into a residuary clause, which, from its very character and phraseology, is designed to cover unremembered fragments of a testator’s personalty. Still less can this be believed where that personalty is a beggarly property not exceeding 200 dollars in value. To include the bulk of the estate in such a residuary clause, while the testator has enumerated and bequeathed personal things of far inferiour value, would violate every known principle of human nature. In 1 Yes. sen. 273. a case is *380 cited from Precedents in Chan. 8. where it was held “that a large sum of money did not pass, because, if the testator had intended it to pass, he would not have couched the gift under such general wordsand in the case itself in Yesey, it is clearly implied that a large sum of money would not be held to pass under the general expressions “goods and chattels in my house.”
All these cases prove, that however general a term may be, its signification will be limited and restricted to meet the views of the testator. The word estate in this will may therefore be so limited; and the rather, as it is a word that an ignorant person may well be supposed to use in a restrained signification, confining it sometimes to landed property, or, if used in reference to personalty, embracing by it slaves, stock, moveables, and other like articles, but rarely comprehending money, bonds, &c. In the case of Minor’s ex’x v. Dabney, the testator’s language shelved that he doubted whether the word would include gig and saddle horses, and the court decided that it did not include certain undevised lands, slaves and other property. So too in Arnold v. Arnold, the testator, by the use of the terms “ wines and properly,’’ seems to have had some doub.t whether wines would pass under the word “property.” Such discrepancies in the use of the most common terms are of every hour’s occurrence. In the present case there can be no doubt that money was not intended to be comprehended, as it is impossible, if it had been, that the testatrix could have expressed any doubt of the existence of a balance of her estate, after the deduction of the insignificant legacies she had specifically given.
For these reasons, and without any reference to the cases on the doctrine of ejusdem generis, I am of opinion to reverse the decree.
Decree affirmed.