𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

ROBINETT V. TAYLOR AND OTHERS.

September 20, 1917.

1. WILLS—*Construction—Presumption Against Intestacy—Case at Bar.*—There is a presumption against partial intestacy. A testator directed that the "Creek Farm," which he described as "the place I now live on," should be rented and the proceeds applied to the support of his wife and two unmarried daughters. After his death he directed that the land be sold to two of his sons, naming them, at the price of $1,800, but in the event of their not being able to pay for it within a certain time, he directed that the land be sold to the highest ·bidder, "and the personal * * * that she may have at her death and after our *feunendl* expenses and all other just debts be paid I desire that all the debts that is coming to me now due be collected and the property that may be sold, and all just claims paid that the. remainder be equally *devided* among all the. heirs" except his daughter M. and his three sons. M. to have two hundred dollars paid to her in a way that her husband could not waste, and the other girls to have "two hundred dollars each in the divide more that the boys all considered."

   *Held:* That the testator intended that his tangible personal property, choses in action and the proceeds of the "property that may be sold" should constitute a fund from which the funeral expenses of himself and wife, and his debts, were to be deducted, and the balance constituted "the remainder" which was to "be equally divided," and, that the testator did not die intestate as to the "Creek Farm" upon which he resided, but that it was included in the words "the property that may be sold" and constituted part of the fund to be equally divided among the heirs, and that the daughter M. took no share in the division of this remainder.

2. OPTION—*Right to Transfer.*—The testator directed that the place on which he lived should be rented and the proceeds applied to the support of his wife and two unmarried daughters, and after the death of his wife directed that the land be sold to

two of his sons for $1,800, but if they failed to pay for it in a certain time, the land to be sold to the highest bidder.

*Held:* That the privilege or option given to his two sons was a valuable one, and one which they had the right to transfer.

3. PROPERTY.—The word "property" is comprehensive enough to cover real estate as well as personal property.

4. WITNESSES—*Transactions with Decedent.*—A vendee of an interest in a decedent's estate is an incompetent witness to prove the purchase after the death of the vendor. But the vendee should be given the opportunity of showing what, if any, payments were made by him on the purchase, and be credited by such payments as might be established.

5. WASTE—*Option—Construction of Will.*—The testator directed that the place on which he lived should be rented and the proceeds applied to the support of his wife and two unmarried daughters, and after the death of his wife directed that the land be sold to two of his sons for $1,800, but if they failed to pay for it in a certain time, the land to be sold to the highest bidder, and the proceeds divided among his heirs. Defendant had acquired the option of the two sons to purchase, but as he had also acquired the interests of all the heirs in the estate, although unable to prove the purchase of the share of a deceased heir, he thought there was no necessity for his making an election to purchase under the option.

*Held:* As the defendant had the right to purchase the land at $1,800, and in good faith believed he had purchased the share of the deceased heir, the heirs of such deceased heir having not asserted their claim before the institution of the suit, a forfeiture would not be enforced in their favor, but they should be restricted to their share of the $1,800. The defendant having clearly elected to keep the land at $1,800, no account should be taken of waste to or timber removed from the land by him.

6. PLEADING—*Title Bond—Proof of Execution.*—Where an answer sets up a title bond as a source of title and files the bond as a part of the answer, the execution and delivery of the title bond not being denied, no other evidence of its execution is necessary under section 3279, Code of 1904.

Appeal from a decree of the Circuit Court of Scott county. Decree for complainant. Defendant appeals.

*Reversed.*

Benjamin B. Taylor, who was the owner of valuable real and personal estate, made a will of which the following is a copy:

"I, Benjamin B. Taylor, being now of sound mind & disposing memory, do make the following as my last will and testament.

"1st. I desire that Hiram H. Taylor my son have the parcel of land contracted to him as the contract will show.

"2nd. I desire that Henry C. Taylor my son have the same land contracted to him, except a small piece on the east end on top of the ridge on the same condition as set forth in the contract with H. C. Taylor and myself except twenty dollars of the purchase money & five bushels of corn per year on the rent.

"3rd. I desire that John D. Taylor have all the land lying between the land sold to Hiram M. Taylor from the top of the North Forks nob to the back side of a large field known as the clover field on the same condition agreed on between said John D. Taylor and myself.

"4th. I desire that Mary Webb the wife of Samuel have a piece of land on the North side of the Big Ridge. Beginning at stake near the N. E. corner of Neri Williams field then a straight line to a stake near the clover field fence thence along the outside of the fence E to a stake at the east end of the fence thence a strait line to 71, 74, Taylor line on top of the fence thence with H. H. Taylor's line to a white oak on or near a lines a peece of land sold by F. G. Martin to R. Dillion thence withe the Dillion line to Neri William's line to the beginning. Now my desire is that Mary Webb have the above named piece of land during her natural life at her death I desire her three boys to have the land, that is, William, Benjamine, & Hiram or those of them that may survive their mother. I desire that the place I now live on be rented and the proceeds be applied to the support of my wife and two daughters, Mahala &

Victoria at the death of Malinda Taylor I desire that the lands rented for her support be sold to H. C. & John D. Taylor for the sum of Eighteen Hundred Dollars if they cant pay for the land in two years the time allowed by me for them for it in then the land to be sold to the highest bidder one one and * * * years credit and the personal * * * that she may have at her death and after our *Feunendl* expenses and all other just debts be paid I desire that all the debts that is coming to me now due be collected and the property that may be sold, and all just claims paid that the remainder be equally devided among all the heirs except Mary, Henry C., Hiram & John D. Taylor, Mary to have two hundred dollars paid to her in a way that Samuel Webb her husband cannot *waist* or fool it away the other five girls to wit Mandy, *Marthe*, Malinda M., Mahala & Victoria to have two hundred dollars each in the divide more that the boys all considered.

"I desire that a bay horse and one pided cow one cane mill, one parton plow and one hill side plow, one rifle gun and three hay *stacts* three oat stacks and two hundred bushel of corn be sold on twelve months credit with bond and good freehold security *waiveing* the homestead all house hold & Kitchen furniture to be left with my wife as long as she remains my widow.

"I appoint William H. Taylor and Henry C. Taylor my executors.

"Given under my hand this 27th day of November, 1881.

        "B. B. TAYLOR.

Attest:

  Jas. P. Carter
  J. C. Taylor
  Isaac Taylor

"An addition to the foregoing will the farm that I desire to be rented for the support of my wife and two daughters

when rented I desire is that they be paid out of what grows on the premises. I desire my widow daughters to have a sufficiency for their support out of the rents and the balance to be sold as other effects there is a yoke of red oxen, one white cow broken horn, two sows and four shoats and all the wheat over twenty bushels I further desire the division line between H. C. Taylor & John D. Taylor on the Creek place to begin at the mouth of the Bottom Spring branch running as and with the fence where it now stands to the South East corner of the old Preston field fence where it now stands thence a *strate* line to the out side fence where it now stands to the middle of the swag between the sink hole out side and the little hollow in side thence with the fence where it now stands to where H. H. Taylor hog pen due south to Robinett's lane, against the lot fence John B. Taylor to have choice of pieces.

"Given under my hand this 13th day of December, 1881."

The testator left surviving him a widow, three sons and six daughters. The widow survived her husband about twenty-nine years and died April 4, 1911. The record does not disclose the value of the personal estate nor what disposition was made of it. There is no controversy over any part of the will except the fourth clause. Nearly three years after the death of the widow, the bill in the present case was filed by some of the heirs of the testator, claiming that the testator had died intestate as to the remainder in the tract of land set apart for the use of the widow and her two unmarried daughters during the life of the widow; that the two sons who had been given the option to take the land at $1,800 had not exercised their option within the time prescribed by the will, and praying a sale of the land and a distribution of its proceeds amongst the heirs according to their respective rights. The bill also alleged that the appellant, Ira P. Robinett, while a mere tenant of the land,

had cut and removed from the land timber of the value of ten thousand dollars, for which it was prayed that he should be held accountable.

The appellant answered the bill, denying that the testator had died intestate as to the land aforesaid, which is designated in the proceedings as the "Creek Farm," and claimed to be the owner in fee of said remainder, setting forth in detail his sources of title thereto, and praying that his answer be treated as a cross-bill as to the heirs of Amanda and Lilburn Robinett, and that they be compelled to convey to appellant the legal title to one share in said remainder.

The trial court referred the cause to a commissioner to ascertain what land the testator had directed to be sold, what waste had been committed on the land by the appellant, and the value of the timber cut and removed from the land. The commissioner examined witnesses and reported that the testator had directed to be sold a tract of land known as the "Creek Farm" containing one hundred and twenty-five acres, unless his two sons, H. C. and J. D. Taylor, would take it at $1,800 within two years after the death of his widow; that no definite amount of waste was shown except the cutting and removal of about 200,000 feet of poplar timber and 75,000 feet of walnut timber; and that appellant had acquired the interest in remainder of all the heirs except Mary Webb and the heirs of H. H. Taylor. Both sides excepted to the report of the commissioner, but all exceptions were overruled, and the court directed the sale of the "Creek Farm," and the division of its proceeds in the proportions of seven-ninths to the appellant, one-ninth to Mary Webb and the remaining one-ninth to E. L. Taylor and W. E. Taylor, heirs of H. H. Taylor, deceased, and referred the cause back to the commissioner to ascertain the quantity and value of the timber cut and removed from the land by the appellant, declaring that the value of

the timber should be divided among the same parties and in the same proportion as the proceeds of the sale of the land aforesaid. From this decree Ira P. Robinett appealed.

*S. H. Bond* and *Coleman & Carter,* for the appellant.

*W. S. Cox,* for the appellees.

BURKS, J., (after making the foregoing statement) deliv-ered the opinion of the court.

The decision of the controversy between the parties to this litigation depends largely upon the proper construction of the fourth clause of the testator's will, which is set forth in the statement of facts. The presumption is against par-tial intestacy (*Prison Association* v. *Russell,* 103 Va. 563, 49 S. E. 966; *Carney* v. *Kain,* 40 W. Va. 758, 23 S. E. 650), and we are of opinion that the testator did not die intestate as to the "Creek Farm." By the fourth clause of the will, the testator directed that the "Creek Farm," which he de-scribes as "the place I now live on," be rented and the pro-ceeds applied to the support of his wife and two unmarried daughters. After the death of his wife, he directs that the land be sold to his two sons, H. C. and J. D. Taylor, at the price of eighteen hundred dollars, but "if they can't pay for it in two years the land is to be sold to the highest bidder * * * and the personal * * * that she may have at her death and after our *Feunendl* expenses and all other just debts be paid I desire that all the debts that is coming to me now due be collected and the property that may be sold, and all just claims paid that the remainder be equally divided among all the heirs except Mary, Henry C., Hiram & John D. Taylor, Mary to have two hundred dollars paid to her in a way that Samuel Webb her husband cannot *waist* or fool it away the other five girls, towit, Mandy, *Marthe,* Malinda M., Mahala & Victoria to have two hun-

dred dollars each in the divide more that the boys all con-
sidered." The privilege or option given to his two sons was
a valuable one, and one they had the right to transfer and
which they did transfer, and the same was acquired by the
appellant, Ira P. Robinett.

The word "property" is one of the most comprehensive
that could have been used in this connection and is cer-
tainly comprehensive enough to cover real estate as well as
personal property. We are of opinion that the testator in-
tended that his tangible personal property, choses in action
and the proceeds of the "property that may be sold" should
constitute a fund from which the funeral expenses of him-
self and wife, and his debts, were to be deducted, and the
balance constituted "the remainder" which was to "be
equally divided." The blank left after the word "personal"
was manifestly intended to be filled by the word "property."
He then mentions debts due him, and follows this with, "the
property that may be sold." He had already directed the
sale of the land and it was the only property he had thus
far in his will directed to be sold. It would seem, therefore,
as he had specifically mentioned "personal property" and
had directed the sale of the land, he meant that the fund
which was to be "equally divided" should be constituted as
above mentioned.

It remains to be seen how this fund was to be divided.
The testator directs that "the remainder be equally divided
among all the heirs except Mary, Henry C., Hiram and John
D. Taylor." As to Mary, he directs that she shall "have
two hundred dollars paid to her in a way that Samuel Webb,
her husband, cannot waste or fool it away." Mary is not
thereafter mentioned. If it was intended that she should
share any further in the division of this "remainder," it is
rather remarkable that this too should not have been
so secured that her husband could not "waste or fool it

away." The testator had by the same clause of his will given her a valuable tract of land, and we are of opinion that the two hundred dollars was the only additional provision intended to be made for her, and as this sum has already been paid to her, she no longer has any interest in the subject of controversy.

As to the shares of the sons, the testator provides that the five daughters named shall "have two hundred dollars each in the divide more than the boys all considered." The appellant has acquired the shares of all the sons and daughters in this remainder except one share owned by the two sons of H. H. Taylor. The appellant testified that he also bought and paid for this share, but produces no deed therefor, and he is an incompetent witness to prove the purchase as H. H. Taylor is dead. He files, however, the note of himself and wife to H. H. Taylor for fifty dollars in which it is stated that the fifty dollars is the "balance of one hundred and fifty dollars for his entire interest in the B. B. Taylor Creek Farm. When this note is paid said Taylor is to make his deed to the land." This note it is true is not signed by H. H. Taylor, nor does it appear otherwise than by the testimony of the appellant that it was ever accepted by or paid to H. H. Taylor. But appellant should be given the opportunity of showing what, if any, payments were made by him on the purchase aforesaid, and be credited by such payments as may be established.

The appellant testifies, and such seems to be the fact, that at the time of the removal of the timber from the land he had purchased the interest of the heirs of B. B. Taylor in the land known as the "Creek Farm," although he may not be able to prove the purchase of the share of H. H. Taylor. The appellant, as the assignee of the two sons, had the right to purchase the land at $1,800, at any time within two years after the death of his widow, but he had already purchased the interests of all the parties except the share

of H. H. Taylor, and he in good faith believed he had purchased this, and there was no necessity for his making an election to purchase. If he was mistaken as to this share, it would be inequitable and unjust to enforce a forfeiture in favor of the holders of this share. As the appellant had the right to purchase the land at $1,800, and in good faith believed he had purchased the share of H. H. Taylor, and it does not appear that the heirs of the latter made any demand or asserted any claim to an interest in the land prior to the institution of this suit, it seems but fair and right that they should be restricted to their share of the $1,800. As Mary Webb is excluded, this share would be one-eighth of eighteen hundred dollars, or $225, subject to credit for any payments which may be shown to have been made thereon. The appellant having clearly elected to keep the land at $1,800, no account should be taken of waste done to or timber removed from the land.

It is assigned as cross-error that the trial court held that the appellant was the owner of the share of Amanda Robinett, as the only evidence of the title was the contract or title bond of Amanda Robinett which was not proved except by the testimony of the appellant, who was an incompetent witness because Amanda Robinett was dead. The answer of the appellant, which was prayed to be treated as a cross-bill as to the heirs of Amanda Robinett, sets up this title bond as a source of title and files the bond as a part of the answer. The execution and delivery of the title bond was never denied by the heirs, and no other evidence of its execution was necessary. Code, section 3279. Except as herein otherwise stated, the parties appear to have been paid the prices agreed upon for their respective interests in the remainder of the estate and the appellant to have acquired title thereto.

Section 2858 of the Code, relating to the acceptance of part performance of a contract in discharge of the contract,

has been invoked by counsel for the appellees, on the ground that, as the sons did not take the land at $1,800, it will have to be sold and will bring $6,000; that the sales to the appellant were made on condition that the sons took the land at $1,800, and the condition not having been fulfilled, the land should be sold and all of the heirs be allowed to share in the proceeds and account to the appellant for what he had paid them, with interest. No such condition appears in the deeds or contracts, and we are unable to perceive any applicability of the section of the Code mentioned.

Upon the whole case, we are of opinion that the trial court erred in holding that the appellee, Mary Webb, had any interest in the subject of controversy in this case, and also in decreeing a sale of the "Creek Farm" and referring the case back to the commissioner to take an account of the quantity and value of the timber cut by the appellant. As to the share of the heirs of H. H. Taylor in the "Creek Farm," further inquiry should be made to ascertain whether or not the appellant had become the purchaser thereof, and, if so, at what price and the balance, if any, due thereon, and, if not, they should be allowed to subject the "Creek Farm" to the payment of $225, with interest thereon from the 4th day of April, 1913, subject to credit for any payments which may be shown to have been made thereon. Upon payment of this sum, or if there was a sale of the interest of H. H. Taylor in the farm, then upon the payment of the balance, if any, of the purchase money, the circuit court should direct a deed to be made to the appellant of the "Creek Farm."

*Reversed.*