MOHCURE, J.
The question to be decided in this case is, whether the residuary clause of the will of Hugh Charles Smith embraces his real estate?
When a man makes his will the presumption, in the absence of evidence to the contrary, is, that he intends thereby to dispose of his whole estate. He often manifests this intention at the commencement of the will by *using such language as this:
*351 “I dispose of my estate in the following' manner.”
This or similar language in the beginning of a will has been held in several cases sufficient to enlarge the meaning of words used in the residuary clause so as to make them embrace real estate, though the words in their proper signification were more applicable to personalty, and that, even though the effect of such construction would be to disinherit the heir.
No such language was used at the commencement of the will in this case. And yet I think it plainly appears from the whole frame of the will, the manifest scheme of the testator, and the circumstances which surrounded him when he made his will, so far as they are disclosed by the record, that he intended by his will to settle and dispose of his whole estate.
He had when he wrote his will, which was a few days only before his death, the will being dated the 25th of July and recorded the 9th of August, 1854, no wife living, and only two children; his son H. Charles, then at the school for the feeble-minded at Boston, and his son Alfred Archibald, who appears to have been very young, though his precise age is not mentioned in. the will nor elsewhere in the record. These two children were naturally chief objects of the testator’s bounty. But he had a large estate, worth, after the payment of his debts, about $90,000, a little more than half in value of which consisted of realty, and there were living many brothers and sisters of himself and his wife, who, or most of whom, had large families, who were also chief objects of his bounty.
The will has all the formality of a perfect disposition of his whole estate, and the language used is sufficiently apt and comprehensive for the purpose. The introductory clause is just such a one as might be expected in *such a will. “I, Hugh Charles Smith, of Alexandria, Virginia, do made this my last will and testament, hereby revoking all others at any time by me heretofore made.”
The testator then proceeds to give to a beloved niece (on the side of his wife) Mary Jane Smith, who for some time had resided in his family, some specific articles, amounting in value to $1,800 or $2,000; to his friend the Rev. Joseph R. Wheeler, $200; and to his servant Addison Webster, $100; after which he provides for the chief objects of his bounty in the manner following, to wit: 1 ‘I give and devise to my friend J. P. Milledg'e of Boston,” &c. (See the will.)
The words “All the rest and residue of my estate” in the residuary clause of the will, are certainly in themselves comprehensive enough to embrace real as well as personal estate; and there could have been no question as to the testator’s meaning in this respect, if he had not coupled them with the immediately succeeding words, “which may at any time accrue and come to the hands of my executor, either from the lapsing of any of the aforesaid legacies or otherwise.” These additional words, without more, would have had the effect of confining the word “estate” to personalty; which alone, in the absence of other provisions of the will, could accrue and come to the hands of the executor. But the next clause, which nominates the executor, clothes him with extensive and important powers, duties and trusts in regard to the real estate, in these words : “I hereby grant him full power to sell or lease any or all of my real estate when, in his discretion and judgment, it may be right and proper. He is also authorized, when needed, to employ a clerk and also an agent to attend to the settlement of the estate, or to the preservation and management of the real property.” Here the testator, by the strongest possible language, *gives to his executor the control, management, possession and administration of his real estate, granting him full power to sell or lease any or all of it, according to. his discretion and judgment. Whatever might have been his relation to the real estate under such a will as this, anterior to the provisions of our statute law on the subject, there certainly can be no doubt but that under the Code he is chargeable with the real estate in his character of executor as much as he is with the personalty. Code, ch. 131, pp. 598, 599. The second section of that chapter declares, that ‘ ‘it shall be one of the duties of an executor or administrator by virtue of his office, and as such embraced by his official bond, faithfully to pay the rents and profits or proceeds of sale of real estate which may lawfully come to his hands, or to the hands of any person for him, to such persons as are entitled thereto.” Real estate is made by statute assets for the payment of debts like personalty, where it is not made equitable assets by will, and is liable like other assets in the hands of an executor or administrator whenever it or its proceeds come to his hands by the terms of the will, whether under a power coupled with an interest or a trust, or under a mere power, the distinction between which seems, as to this question, to be wholly immaterial. The real estate then, by the express terms of this will, is a part of the estate which accrued and came to the hands of the executor, and is therefore expressly embraced in the residuum.
I do not think there is any material force in the argument that as the person named as executor is also requested to act as guardian to the testator’s son Alfred, the powers given to him over the real estate may have been given to him in his character of guardian, and not in his character of executor. It is obvious from the nature of the powers, and from the terms of the particular ^clause which give them, and from the whole will, that the powers were given to him in his character of executor.
This being the natural and proper meaning of the words used in the residuary clause, the question to be now considered is, whether there be anything in the other *352 parts of the will, or- in the -whole will taken together, read by the light, of surrounding circumstances, which requires .us to - put upon those words a different meaning, and to confine them to the personal estate? So far from that, I think it will be found that the natural and proper meaning of the words.used in the residuary clause is confirmed by the rest of the will.
The will is certainly'not inofficious. The testator provides most amply for both of his sons. In regard to his feeble-minded son H. Charles, who, I suppose, in the nature of things, could have no family, and who therefore - required no provision for a longer period than his life, the testator gives $12,000 to trustees to be invested for the support and maintenance of his said son during life, expressing a desire that full and ample allowance should be made for that purpose; and if the fund thus set apart should prove to be insufficient for the support and maintenance of his ' said son, directing his executor to make up and provide for the deficiency out of the residue of his estate. Upon the death of his said son, the testator gives the said $12,000 and the unexpended increase thereof to the children-of his deceased wife’s brothers and sisters. There are two things observable in regard to this provision for the feeble-minded son, as materially bearing upon the question we are now considering. First — That his executor is directed to provide for the deficiency out of the residue of his estate, that is, his whole estate, real and personal, which is to come to the hands of his executor, by whom the deficiency is to *be made up. Secondly — The provision thus made for this son is not only a full and ample provision for him, but evidently all that the testator intended him to have out of the estate. Surely tire testator could not have intended that this son should have, in addition to what was thus flven him, one-half of the real estate, worth 47,000. What could he want with it? or, to speak more properly, what need had he of it? All his possible wants were .amply supplied by the provision expressly made for him, and the whole residue of the estate, real and personal, was charged with the deficiency, and the executor was clothed with ample power to make up any such deficiency out of such residue. If the said son could have needed anything beyond a life estate, the $12,000 would not have been given over at his death to the children of the brothers and sisters of the testator’s deceased wife. But what was to be done with his share of the real estate during his life and after his death, supposing that the testator intended that he should have one-half of the real estate? Are the rents and profits to accumulate during his life, for the benefit of his collateral heirs at law at his death? He did not need them for his support during his life. Would the testator, who has'been so careful in regard to the $12,000, have said not a word in regard to the disposition to be made of the real estate or the rents and profits thereof, either during the life or at the death of his said son, if- he had intended said son to have one-half of the real estate? If he so intended, could there have been any occasion for providing that, should the fund set apart for the support and maintenance of his said son prove insufficient for the purpose, the deficiency should be made up out of the residue of the estate? It is impossible, I think, to read the will without being satisfied that the testator intended to give to his son H. Charles no more of his estate than *that which was devoted to the sup- . port and maintenance of his said son as aforesaid.
In regard to his other son Alfred Archibald, a full and ample provision is made for him also. It does not appear what was his age at the testator’s death, though he was certainly under seventeen, and probably very young. For the purpose of securing to him a plain and solid education, and a comfortable and adequate maintenance and support, the testator directs his executor to pay to Mary Jane Smith, a niece of his wife and a favorite of the testator, living in his ■family at the time of his death, or to such other member of his own or his wife’s family who might have the care and charge of his said son, the sum of $1,000 per annum, so long as he might remain under her or their charge. This was certainly a most ample provision for the purpose. On his attaining the age of twenty-one years, $10,000 are to be paid to him, to be his absolutely. In the event of his death without attaining that age, this sum of $10,000 is directed to be divided among the children of the brothers and sisters of the deceased wife of the testator, in the manner directed in reference to . the sum of $12,000 before mentioned. On his attaining to the age of twenty-one years, the testator desired his executor to invest the further sum of $20,000 in some safe stock or upon real security, to be held by the executor upon trust to collect and re-invest the interest and profits thereof until his said son Alfred should attain to the age of twenty-five years, and then and thereafter the said fund and the accumulations thereon to be held by the executor upon trust to pay over the income and interest arising therefrom to the said Alfred during his life, and upon his death to be equally divided amongst any children he might leave, or their descendants, per stirpes; and in the event of his leaving no issue living at his death, then *the said fund was directed to be paid . over to such persons as the said Alfred might, by last will and testament, designate and appoint. Now this is not only an ample provision for the testator’s son Alfred, but it is obviously, I think, all that the testator intended to give him. To have given him more the testator may have supposed might do his said son more harm than good, by diminishing his incentives to exertion, and causing him to spend his life in idleness and extravagance. The testator manifested in his will much solicitude on this subject, and while he secures to his *353 said son the means of procuring- “a plain and solid education, and a comfortable and adequate maintenance and support,” he expresses a “wish that no extravagance shall be connected with his education in any way,” and a trust that “he will be taught care and economy, and a prudent and generous liberality.” And then he says : ‘ ‘When my said son Alfred shall desire to select a profession or business, I trust his kind friends and relations in England and America will consult and advise with him on his course of life. My main object and ardent desire is that he shall have religious and domestic influences and domestic comforts wherever he may be.” Can it be believed that, in addition to these careful and ample provisions in regard to his son, the testator intended to give him, or leave to descend upon him, in fee simple, one-half, and ultimately the whole, of a real estate worth $47,000? If he had intended that his said son should have that estate, would he not have created a trust and prescribed limitations in regard to it, as he did in regard to the $20,000? Would he not have said plainly, whether the estate was to be delivered to his said son on attaining the age of twenty-one years, or was to be continued to be held thereafter by his executor, and what, in the latter event, was to be done with the profits; whether to be paid over as received *to his said son, or to accumulate for the benefit of the issue or devisees of his said son? Having provided amply for his two sons, and also for the children of the brothers and sisters of his wife, and having several brothers and sisters of his own who, or most of whom, had large families, for whom and their families he wished to provide, was it not reasonable and natural that he should give the residue of his estate, whether consisting of realty or personalty, to his said brothers and sisters or their children? And if we find, on reading the balance of his will, that he uses language which, according to its proper import, creates such a gift, can we defeat his intent upon any such ground as that an heir at law cannot be disinherited by implication? Certainly not.
And now let us look to the residuary clause and that which nominates the executor and prescribes his duties and powers in regard to the real estate.
It is impossible to read the residuary clause without being satisfied that the testator thereby intended to give a substantial benefit to. the objects of his bounty therein mentioned. Those objects were his own brothers and sisters and their children, the nearest living relations he had, after his two sons, whom he had in the previous part of his will amply provided for. “All the rest and residue of my estate which may at any time accrue and come to the hands of my executor, either from the lapsing of any of the aforesaid legacies or otherwise, I wish to be divided into equal portions, corresponding in number with the number of my brothers and sisters living at the time of my decease. And should any of my brothers and sisters die leaving children before my decease, a share shall be set apart for such children, as if my said brother or sister were still living. And I direct that each of my brothers and sisters who are unmarried or childless shall receive one of said shares, and the other ^shares to go to the children of my other brothers and sisters, so that each family will receive an equal share; and each child to receive their portion on attaining the age of twenty-one years.”
The testator had six brothers and sisters living at the date of his will and also at the time of his death, two of whom were at the latter period unmarried or childless; the rest had children in different numbers amounting in all to seventeen. So that the residuum was first to be divided into six parts, and four of the parts were then to be subdivided in different proportions into seventeen parts; that is, one of the four into two parts, one into three, one into four, and one into eight parts. Five of these children were of age when the testator died, or at least when the suit was brought, and the rest were under age. The debts of the testator and the pecuniary legacies given by his will are about equal to his personal estate. So that if he did not intend to dispose of his real as well as his personal estate his residuary legatees -will get nothing except in the remote contingency of his son Alfred’s dying without issue and without disposing by will of the $20,000 left to him, in which event the residuary legatees will become entitled to that sum as a lapsed legacy. It was argued that the testator may have over-estimated the value of his personal estate, and may have supposed that he was giving to his residuary legatees, numerous as they were, a substantial benefit in giving them only the residuum of his personal estate. But it must be remembered that the testator died a few days only after his will was written, and there could have been no material change in the value of his property in that short interval. It does not appear of what his personal estate consisted. His debts amounted to but $2,500. It is not probable that he estimated his personal estate much above its real value. He gave to *'the nephews and nieces of his wife what was equivalent to a certain legacy of $12,000 at the death of his son H. Charles, and a legacy of ten thousand more in the event that his son Alfred should die under age. It is fair to presume that he did not intend to give less to his own brothers and sisters, nephews and nieces. He contemplated an immediate division, at least to some extent, among his residuary legatees at the time of his death or in a reasonable time thereafter. His death is fixed as the period when his residuary legatees are to be ascertained. Anjr brother or sister then living, unmarried or childless, was to have a share, and the rest was to be divided among the children of the other brothers and sisters, each child to receive his or her portion on attaining the age of *354 twenty-one years. Some of the children were already of age, and were of course entitled to receive their shares immediately, or so s.oon as the subject came to-hand and was ready for division. The testator evidently wrote the residuary clause of his will in reference' to a subjebt the chief part of which he contemplated as presently divisible at or shortly after the period of his death. He ' did not anticipate the death of his, son Alfred without issue and without wili as a probable event, though he knew it was possible, and therefore made his residuary clause broad enough to embrace it. But he made the clause more in view of a subject which was at the same time substantial and certain and capable of being presently enjoyed. The testator has clearly manifested an intention that the children of his brothers and sisters should be preferred as.objects of his bounty to their parents, and therefore includes among his residuary legatees only such of' his brothers and sisters, living at his death as were unmarried or childless. ' Is it reasonable to suppose that he would have left the whole of his real estate to descend to his brothers and sisters as heirs at *law in the event of his son Alfred’s dying under age, or without issue or will? If he had intended that his real estate should descend at all to his sons, is it not reasonable to suppose that he would have provided for the contingency of their dying under age or without issue or will, and directed the real estate in that event to be divided in the same manner and among the same persons as he had directed in regard to the residuary personal estate.
It seems to me, therefore, that the residuary clause itself affords strong intrinsic evidence of an intention to include therein the real as well as the personal estate. And' this, I think, is rendered conclusive by the clause immediately succeeding, which nominates the executor and prescribes his duties and.powers in regard to the real estate. “I hereby grant him full power to sell or lease any or all of my real estate when, in his discretion and judgment, it may be right or proper. He is also authorized when needed, to employ a clerk and also an agent to attend to the settlement of the estate or to the preservation and management of the real property.” The testator obviously intended to place both his real and personal estate, except specific legacies, in the hands of his executor for all the purposes of his will, as a fund out of which he might draw, as most convenient, the means of paying the debts and pecuniary ’ legacies, and then to be divided among the residuary devisees and legatees. It might be more convenient to sell real than personal estate, to some extent at least, for the payment of legacies; or it might be convenient to sell some part or the whole of the real estate for the purpose of division among the’ residuary dev-isees; or it might, and doubtless would, be necessary or proper to hold the real estate or a portion of. it until a final division could be made under the will; or it might be good policy to sell the real estate or part of it and invest the proceeds in other subjects *until required for division under the will. To meet all these contingencies ample power is conferred upon the executor. Can it be supposed that all this power is conferred in regard merely to a descended estate? Can it be supposed that the testator with his valuable real estate thus fully in his mind, and thus conferring on his executor these ample powers in regard to it, would have omitted it altogether in the disposition of his estate? Can it be supposed that in the clause immediately preceding that which confers these powers, he would have given the residuum of -his estate in language broad and apt enough to embrace the realty without expressly saying that he intended not to embrace it, if such had, in fact, been his intention? I cannot think so.
I am therefore of opinion that whether we look .to the residuary and concluding clauses alone, or to the whole will taken together and read in the light of surrounding circumstances, the residuary clause applies as well to real as to personál estate.
In the foregoing opinion I have referred to no authorities, because I think they oftenér mislead .than aid us in the construction of a will. If two wills could be found exactly alike, and made under precisely the same circumstances, a decision in regard to the construction of one might be good authority for the construction of the other. But as that is rarely if ever the case, as there is almost as much diversity in wills as there is in the human countenance, the construction of one rarely if ever throws light on the construction of another. To be sure there are rules of construction which have been settled by the courts; and which therefore must govern us in other cases. But the first and best of all these rules is, that the intention of the testator is the polar star by which we are to be guided in the construction of his will; and that in order to ascertain the intention we may, if *necessary look at the whole will and all the surrounding circumstances. The application of that rule to this case-leaves no doubt on'my mind as to the true construction of the residuary clause of the will in question.
In my view of the case the doctrine of conversion does not apply to it, and it is therefore unnecessary to notice the cases of Achroyd v. Smithson, 1 Bro. C. C. 508; Amphlett v. Parke, 2 Russ & Myl. 221, 13 Cond Rng. Ch. R. 4; and other cases of that class, which are collected and commented upon in the notes to the first named case in 1 Heading Cases in EJquity 557 marg. If personal estate only had been included in the residuary clause it would then have been material to inquire whether the real estate was converted out and out into personalty by the will. But the words of the residuary clause apply as well and as much to real as to personal estate; and in my opinion were plainly intended by the testator to be applied to both.
*355 I therefore think the decree of the Circuit court so far as it is inconsistent with the foregoing opinion, ought to be reversed, and a decree entered in conformity with the said opinion.
RIVES, J., concurred in the opinion of Moncure, J.
JOYNES, J., dissented.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the testator Hugh Charles Smith did not die intestate as to his real estate, and that the words, “all the residue of my estate which may at any time accrue and come to the hands of my executor, either from the lapsing of any of the aforesaid legacies or otherwise,” in the residuary clause of the will, are applicable, and were intended by the testator to be applied to *real as well as personal estate: and that the said decree of the Circuit court, so far as it is inconsistent with the foregoing opinion, is erroneous. Therefore, it is decreed and ordered, that so much of the said decree as is above declared to be erroneous be reversed and annulled, and the residue thereof affirmed. And that the appellant Richard C. Smith, executor of Hugh C. Smith deceased, out of the assets of his said testator, pay to the appellees the residuary legatees of the said testator, their costs by them about their defence in this behalf expended ; which is ordered to be certified to the said Circuit court.
Decree reversed.