Moncure, P.,
delivered the opinion of the court.
The controversy in this case is, as to the true construction of the will of John Markell, and is between his devisees—his two sons, James Henry Markell and Arthur Markell, and his two nieces, Elmira Markell and Sally Morgan Markell. The said will is in the words and figures following, to wit:
“ I, John Markell, of Winchester, Virginia, do make my last will and testament as follows :
“ 1st. I desire all my debts to be paid by my executor.
“2d. I give to my wife Mary all the property of every kind which belonged to her at the time of our marriage; and in addition thereto, I give to her, for and during her natural life, the house in which I now live, with the yard and garden attached thereto, and my servant girl Adaline, and any increase which she may have; and I give to my said wife, in absolute right, one-third of my personal estate, and she shall have the right to take any of the personal property, at the appraisement price, in part of her share.
“ 3d I give to my niece Elmira Markell the portrait of my deceased daughter Bettie, and the ambrotype of my deceased wife; and I give my engravings to my niece Sally Morgan Markell, and family bible to my niece Elmira.
*546 “4th. I give to my nieces my Confederate State bonds, to be delivered to them in kind, my servant Adeline and any increase that she may have, subject to my wife’s life estate, and such of my beds and bed clothing as my wife shall not take at the appraisement price.
“ 5th. All the rest and residue of my estate to be divided into two equal shares, and I give one-half to my two sons, James Henry Markell and Arthur Markell, and the other hálf to my nieces above named; but if, from any cause, either alienage or confiscation, either of my said .sons cannot take or hold the share hereby given to him, then and in that event I give the share of such one to my two nieces above named.
“6th. I appoint my friend, Philip Williams, executor of this my last will.
“ 7th. I hereby revoke all former wills.
“Given under my hand and seal this 7th day of December, 1864.
“John Markell, [Seal.]
“Signed, sealed and proclaimed by the testator as his last will in our presence, who, in the presence of the testator and at his request, and in the presence of each other, Pave subscribed our names as witnesses.
“P. Williams.
“John D. Marvin.”
“ At a court held for Frederick county on Monday, May 1st, 1865, this last will of John Markell, deceased, was produced to the court and proved by the oath of P. Williams and John D Marvin, the subscribing witnesses, thereto and ordered to be recorded.
“J. C. Riely, Clerk.”
This bill was filed in the circuit court for Frederick county in 1878, by the said James Henry Markell and *547 Arthur Markell, against the said Elmira Markell and ° i • i Sally Morgan Markell. The complainants, in their said bill, among other things, allege “that amongst the perty devised was the house in which the testator, at the date of the execution of this will, lived; which he left to his wife for life. She is dead, and your orators are his only heirs at law. They claim the said real estate, which is located in Winchester, and deny that any others than themselves are interested in it.”
The complainants then set forth the residuary clause of the will, and say that “ it is under this clause that the said S. M. and E. Markell claim one-half of the reversionary interest in said house and lot after the death of testator’s wife. Tour orators were advised by the late P. Williams, the counsel of the testator, and by other eminent legal gentlemen, that the will left the property to them as heirs at law, after the death of the testator’s wife. The testator had, before reaching the residuary clause, designated his wish as to certain specific parcels of real and personal property. He had much other real and personal property to dispose of, other slaves, another house, &c. Then as to this residuum of property he makes a disposition evidently excluding from his contemplation the other property. He confines the residuary clause to this real and personal estate other than that already disposed of. Prior to the execution of the will, up to the time of the execution, at the very time of its execution, and thereafter until his death, the testator explained and declared that this property was to be the absolute property in fee simple of your orators after the death of the wife, and that his will so provided and meant. This testimony, which in due time your orators will produce, explains any latent ambiguity on the face of the will. The house’ in dispute was the testator’s residence, and the will provided for her holding it and other property in lieu of dower.”
They therefore pray that the said Sally Morgan Markell *548 and Elmira Markell be made defendants to the bill, that the said house and lot and appurtenances be decreed to complainants, and that they may have general relief.
The said Elmira Markell and Sally M. Markell filed their answer to the said bill, in which answer they said, among other things, that by the said will “ the decedent intended to dispose, and did dispose, of all the property which he then possessed ; but your respondents deny the statements of the bill as to the intention of the testator in regard to the house and lot referred to in the bill, though such allegations are immaterial to the consideration of this case, and they claim that they are, in moral right, as well as in legal effect, entitled to one-half of the said house and lot under the residuary clause of the said will.” “Your respondents were the nieces of the said decedent, the daughters of a brother for whom the testator had the tenderest affection, and whose welfare he ever had before his mind; one who was without means and in embarrassed circumstances, while the testator was a thrifty and successful man. Your respondents were each to him as a daughter, and as it became evident that their own father, through delicate health, .seemed soon about to leave them helpless, the decedent became the more interested in their behalf, and so remembered them, not only affectionately, but also substantially, in the disposition of his estate. Your respondents deny all the allegations of the bill upon which the complainants base their claim to an exclusive ownership of the said house and lot, and pray that they may be held to strict proof of the same.”
The following was agreed to and signed by the parties, by their counsel, and filed as evidence in the case:
“ Statement of Facts.
“John Markell made his will December 7, 1864; he died February 9,1865. When he made his will, and when he died, he owned the following real estate :
*549 “ 1st. The house and lot left to Mrs. Markell (after-wards Mrs. Mary Kohlhousen) for life, referred to in the will of John Markell, deceased.
“ 2d. The house and lot in Winchester in which John Markell lived.
“3d. A vacant lot in Winchester, on the corner of Warwick and Kent streets, worth in good money about $800.
“4th. A house and lot on East lane in Winchester, worth about $800 in good money. Also the following personalty: numerous bonds and considerable personal property not specifically mentioned in John Markell’s will, as appears in the appraisement, commissioner’s reports, and statements filed in the papers of J. H. and A. S. Markell v. J. Markell’s adm’r & al., amounting to some thousands of dollars in value. Nov. 23d, 1878.
“ James H. Markell, “Michael Hassett.”
“ Endorsement.
“Nov. '26, 1878. We consent that the within may be read as the depositions of the persons who sign it.
“Wm. L. Clark,
“ Counsel for defendants.
“ Dandridge & Pendleton,

“Attorneys for eorriplainants.”

“ It is also agreed that the original will of John Markell is in the handwriting of P. Williams, deceased, who was a lawyer at the Winchester bar for forty years.
“ Dandridge & Pendleton,
. “ Attorneys.
“Wm. L. Clark,
“ Counsel for defendants.”
Three depositions were taken and filed as evidence in *550 ^le case *n behalf of the complainants, who testified, among other things, in substance, as follows:
1st. Adeline Siscoe testified, that in 1864, she lived with J0bn Markell’s wife—his third and last wife—she knew him—was his servant—had belonged to him, and was raised by him. “Before his will was made, he said he intended the house he lived in for her, his wife, to do as she pleased with it. She would not accept it that way, because she said that at her death she would rather it would go to the boys—I mean his two sons. This talk was two or three days before the will was written. He said in reply, that if she wished it that way let it be so.”
The defendants excepted to the foregoing deposition, so far as it introduces any evidence of the intentions of the said decedent as to what disposition he desired to have made of his property; also of any statement of Mrs. Markell, the same being incompetent. Not waiving the exception, they proceeded to cross-examine the witness, and among other questions asked her: “2d question. Were you present when the conversation occurred which you repeat, that Mr. Markell had with his wife ? ” *To which question she gave the following “Answer. I was there. It was in his house. It was in his bed room. No one was present but myself and him and his wife. He was talking about making the will. I recollect the conversation distinctly. I don’t know how long it was before he died. It was not a great while. I did not see him sign the will. I wasn’t in his room when the will was signed. I never saw the will.” “ 3d question. How do you manage to recollect the conversation thus referred to—when did Mr. Markell die?” To which she gave the following “Answer. Mr. Markell died in February, 1865, . during the war. I have been remembering the conversation.”
2d. Miss S. E. Clipstine, in answer to a question propounded to her by complainants: “ Please state anything *551 you may know of the disposition that Mr. John Markell J J r intended should be made after his wife s death of the house in which he resided and which by his will was to his wife for her life,” (to which evidence the defendants excepted), said as follows : “He wished to leave it to subject to her own will, but she said, Ho, Mr. Markell, you have sons, and it ought to go to them at my death; and he said, Well, Mary, if you wish it so it shall be so; that is what she told us, my sister and myself, frequently. We were living on her property, and she came frequently to see us, and every time she came she mentioned the subject. She hadn’t any other thought or wish.”
3d. Fanny A. Clipstine (to whose evidence the defendants also excepted) testified to the same effect as did her said sister.
On the 11th day of March, 1879, the cause came on to be heard, &c.; when the court was of opinion and decreed “ that the true construction of the will of John Markell, deceased, is that the complainants, his sons, and the defendants, his nieces, are jointly and equally, share and share alike, entitled to the reversion of the house and lot referred to in the bill, and that said reversion hath now fallen in by the death, of Mrs. Markell (afterwards Mrs. Kolilhouson), the life tenant; and it further appearing that the said property is not susceptible of partition in kind, a sale of the same was accordingly decreed, as mentioned in the said decree.
From which said decree, adjudging that under the said will the complainants, the said two sons of the testator, and the defendants, his said two nieces, are jointly and equally, share and share alike, entitled to the reversion of the said house and lot, which reversion hath now fallen in by the death of the life tenant aforesaid, the said complainants applied to a judge of this court for an appeal; which was accordingly allowed.
Did the testator intend by his will to give to his two *552 nieces a moiety of the reversion or remainder of the house and lot given to his wife for and during her natural life* did he intend thereby to give to his two sons the whole of said reversion or remainder, or to leave it undisposed of by his will, so that it would devolve on his said two sons as his only heirs at law ? This is the question which we now have to solve.
In the construction of a will, the intention of the testator, as therein signified, must prevail and be carried into • effect, if it be legal and the testator be sane.
There is no doubt about the sanity oí the testator in this case. He was certainly sane when he made and published his will. Ivor is there any doubt that but such a testator can disinherit his own issue, and leave his whole estate to strangers. Much less is there any that he may leave a moiety of his estate to his two nieces, to whom he was ■greatly attached, and who were in great need of his bounty, especially when, by his will, he gives the other moiety to his two and only heirs at law, after amply providing for his wife.
The will in this case was written, not by an illiterate testator, but by Philip Williams, the executor therein named, a -distinguished lawyer of more than forty years’ practice. It is plainly indicated in the will that the testator intended thereby to dispose of his whole estate in possession or in action.
“I, John Markell, of Winchester, Virginia, do make my last will and testament as follows,” is the first clause of the will, and just such a clause as might be expected in a will in which the testator intends to dispose of his whole estate, leaving no part of it to devolve, by mere operation of law, on his heirs or next of kin.
“ 1st. I desire all my debts to be paid by my executor,” is the second clause, and just such a one as might be expected in such a will; thus plainly indicating that the testator intended, first, that his estate, or so much of it as *553 might be necessary for the purpose, should be applied to the payment of his debts, and all his remaining estate, after the payment of his debts, should be disposed of as is directed by his will.
“ 2d. I give to my wife Mary all the property of every kind which belonged to her at the time of our marriage, and in addition thereto, I give to her, for and during her natural life, the house in which I now live, with the yard and garden attached thereto, and my servant girl Adaline, and any increase which she may have; and I give to my said wife, in absolute right, one-third of my personal estate, and she shall have the right to take any of the personal property, at the appraisement price, in part of her share.” This is the provision made by the testator for his wife, and it seems to be perfectly plain. Indeed, no question has been raised about it. The provision is by an absolute gift, except as to the house, yard and garden, and servant girl Adaline and any increase she might have, therein mentioned, which are given to her for and during her natural life.
The next is a gift of some small mementoes to the testator’s two nieces:
“ 3d. I give to my niece, Elmira Markell, the portrait of my deceased daughter Bettie, and the ambrotype of my deceased wife, and I give my engravings to my niece Sally Morgan Marked, and my family Bible to my niece Elmira.” There can certainly be no doubt as to the meaning of the testator in this clause. Nor can there be any as to his meaning in the next, viz:
“ 4th. I give to my nieces my Confederate State bonds, to be delivered to them in kind, my servant Adaline and any increase that she may have, subject to my wife’s life estate, and such of my beds and bed clothing as my wife shad not take at the appraisement price.”
Then follows the residuary clause of the will, which seems to be perfectly plain, but is the clause, and the only *554 clause, of the will about the meaning of which there is any ° J controversy.
“ 5th. All the rest and residue of my estate is to be divided into two equal shares, and I give one-half to my two sons, James Henry Markell and Arthur Markell, and the other half to my nieces above named; but if, from any cause, either alienage or confiscation, either of my said sons cannot take or hold the share hereby given to him, then, and in that event, I give the share of such one to my two nieces above named.”
Could more comprehensive words have been used to embrace the whole residuary estate, real and personal, in possession, remainder or reversion, which had not previously in the will been disposed of? “All the rest and residue of my estate is to be divided in two equal shares.” It is contended by the appellants, by counsel, that these most comprehensive words were not intended by the testator to embrace the reversion or remainder of the house and lot given by him to his wife for life, though it is not contended that they were not intended to embrace the reversion or remainder of the servant girl Adaline and any increase she might have. Why not embrace the one as well as the other? Suppose that he certainly did intend to embrace the said reversion or remainder of both—how could he have used more suitable and comprehensive language to express such intention? The will was written by an enlightened lawyer of forty years’ practice. Must he not have known that the comprehensive words which he used expressly included the said reversion or remainder? and if the testator did not in fact intend to include it, would not the draughtsman of the will have therein used additional language to explain the testator’s meaning and to avoid otherwise inevitable misconstruction?
“ But if from any cause, either alienage or confiscation, either of my said sons cannot take or hold the share hereby given to him, then and in that ease I give the share of *555 such one to my two nieces above named.” Is it not plain .. . . . .. .. that the testator intended to embrace in this provision his son’s portion of the reversion or remainder of the and lot given to his wife for her life as aforesaid? Could he have intended that if from any cause, either alienage or confiscation, either of his said sons could not take or hold the share given to him by the will, then and in that event the two nieces should have all of said share, except of the said reversion or remainder, but that his share of that should be confiscated or be subject to be disposed of otherwise than the rest of his said share ? If he had so intended, would not the draughtsman of the will, and especially such a draughtsman, have used plain language to avoid otherwise inevitable doubt and misconstruction ?
By the 4th clause of the will, as we have seen, the testator gave to his nieces his servant Adaline and any increase she might have, subject to his wife’s life estate therein j which shows that when he made his will he had in his mind the reversion or remainder of the estate, real and personal, given to his wife for her life j and the presumption is that he intended to dispose, by his will, of the whole of the said reversion or remainder. He expressly disposes of a portion of it by the 4th clause of the will, and just as plainly disposes of the residue of it by the comprehensive words used in the 5th or residuary clause of the will.
The only remaining clauses of the will, the 6th and 7th, confirm the view hereinbefore presented, that the testator intended by his will to dispose of his whole estate, in possession, remainder or reversion—the 6th being, “ I appoint my friend Philip Williams executor of this my will ” j and the 7th being, “I hereby revoke all former wills.”
And then follow the concluding words of the will:
“Given under my hand and seal this 7th day of December, 1864.
“John Markerr. [Seal.]”
*556 At the foot of which is a very full and formal attesta- . J tion clause:
“ Signed, sealed and proclaimed by the testator as his last will, in our presence, who, in the presence of the testator, and at his request, and in the presence of each other, have subscribed our names as witnesses.
“P, Williams.
“John W. Marvin.”
The only evidence in the case being that of the three witnesses introduced by the complainants, is wholly insufficient to affect the construction of the will, the meaning of which seems to be therein plainly expressed, as herein-before shown. ‘ A will cannot be contradicted by parol testimony], however positive it may be, or however recently given after the execution of the will. In this case the testimony was given more than thirteen years after the execution of the will, with which neither of the said three witnesses had any connection, nor on which occasion was either of them present. One of them, Adaline Siscoe, was a slave of the testator, and testifies to what she says she heard the testator and his wife say to each other two or three days before the will was written. The other two, S. E. Clipstine and Fanny Clipstine, who were living on the property of the testator’s wife, and she came frequently to see them, and every time she came she mentioned the subject—their testimony is of what they profess to have heard the testator, and especially his wife, say in regard to the disposition intended by the testator to be made of the house and lot in question, after the death of his wife. Surely such testimony can have no weight or effect in such a case.
We think there is no conflict with any of the views hereinbefore presented in either of the three cases of Mention v. McRoberts & wife, 1 Wash. 96-114; Philips & wife
*557 v. Melson, 3 Munf. 76-78; and Minor’s ex’x v. Dabney, 3 Rand. 191-213, cited, and so much relied on, in the argument of the counsel for the appellants—nor in any the other cases therein cited. The transaction on which the first two of the said three cases occurred transpired before the enactment of October, 1785, thatcc every estate in lands which shall hereafter be granted, conveyed or devised to one, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple, if a life estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law.” 12 Hen. Stat. at Large, p. 157. The present statute on the subject is in the Code of 1873, p. 889, ch. 112, § 8, and is in these words: 11 Where any real estate is conveyed, devised or granted to any person without any words of limitation, such devise, conveyance or grant shall be construed to pass the fee simple or other the whole estate or interest which the testator or grantor had power to dispose of in such real estate, unless a contrary intention shall appear by the will, conveyance or grant.” In such case at common law, no greater estate than one for the life of the grantor or testator was thereby transferred. See 1 Tuck. Com., book 2, ch. 5, pp. 42-44. The said views are fully sustained by those of this court in Smith’s ex’or v. Smith & al., 17 Gratt. 268-288, cited and relied on in the argument of the counsel for the appellees in this case.
The court is therefore of opinion that there is no error in the decree appealed from in this case, and that the same ought to be affirmed.
Degree affirmed.