## Richmond.

GALLAGHER & ALS. V. ROWAN'S ADM'R & ALS.

APRIL 10th, 1890.

WILLS—*Construction*—*Case at bar.*—Testator willed "The Grange" to M. "and her heirs forever," and if she die without issue it should be sold and one-half of the proceeds be given to "the cause of domestic and foreign missions," and the other half to certain relatives. By residuary clause he wills all his remaining estate to M. She died without issue, C., her husband, surviving: *held*, 1. M. took a defeasible fee in "The Grange." 2. The direction to sell it upon the failure of her fee therein converted it into personalty. 3. The legacy to the missions was void for uncertainty. 4. The half of proceeds given the missions went into the residuary fund, and to C. as husband and sole distributee of M.

Appeal from decree of circuit court of Middlesex county, rendered September 3, 1888, in the cause of W. W. Woodward, administrator d. b. n., c. t. a. of Manus Rowan, deceased, complainant, against Ann Gallagher and John Gallagher, her husband, C. B. Cary, husband and sole distributee of Minnie E. W. Cary, deceased, and others (the appellants), defendants. Opinion states the case.

*Pollard & Latane*, for the appellant.

*H. R. Pollard*, for the appellees.

LEWIS, P., delivered the opinion ot the court.

This was a suit in equity for a construction of the will of

Manus Rowan, deceased, and to have the estate administered under the direction of the court. The first clause of the will is as follows :

" I give and bequeath to my beloved wife, Fanny P. Rowan, my estate called the ' Grange,' during her life, and at her death I give it to my adopted daughter, Minnie E. McCarty, and to her heirs forever. Should she die without issue, in that event it is to be sold in the customary way, on one, two and three years credit. One-half of the proceeds of the land thus sold to be appropriated to the cause of domestic and foreign missions; the other half to be equally divided between the heirs of my brother, Gilbert Rowan, and the heirs of my four sisters," naming them.

And then, after making sundry bequests, the testator, by the fifth and last clause of the will, provides as follows : " All my remaining estate, real and personal, I give and bequeath to my dear wife during her life, and at her death to my dear Minnie McCarty."

The widow died in 1883, and Minnie McCarty, who intermarried with Dr. S. B. Carey, died without issue in 1886, leaving her husband surviving her. It is conceded that the bequest in the first clause of the will to foreign and domestic missions is void for uncertainty, and the question to be determined is, To whom do the proceeds of the land thus bequeathed go ? Does the money pass under the fifth or residuary clause of the will to Dr. Carey, as the sole distributee of his deceased wife; or to her heirs-at-law as realty ; or does it go to the heirs-at-law of the testator ?

The law is that where money is directed by will to be laid out in land, and the purpose of the conversion wholly fails, the fund results in its original form to the personal representative for the next of kin or the residuary legatee, as the case may be; and the same rule applies where the failure of purpose is only partial. *Phillips* v. *Ferguson,* 85 Va., 509 ; 3 Pom. Eq., sec. 1172.

With respect, however, to the conversion of land into money, the rule, independent of any statute on the subject, is that where the purpose of the conversion wholly fails, the land results to the heir. Where the purpose only partially fails, the conversion must still be made by selling the land in order to satisfy the purposes which remain effective, and, after satisfying those purposes, the surplus, unless the will otherwise directs, results to the heir of the testator as money, and in case of *his* death will go to his personal representative, even though the sale did not take place until his death. 3 Pom. Eq., sec. 1171; *Ackroyd* v. *Smithson*, 1 Bro., Ch., 503; 1 Lead. Cas. Eq., 872; *Smith* v. *Claxton*, 4 Madd., 484; *Wright* v. *Wright*, 16 Ves., 188; *Fitch* v. *Weber*, 6 Hare, 145; *Spencer* v. *Wilson*, L. R., 16 Eq., 501; *Hutcheson* v. *Hammond*, 3 Bro., Ch., 148; *Salt* v. *Chattaway*, 3 Beav., 576; *Craig* v. *Leslie*, 3 Wheat., 563; *Lindsay* v. *Pleasants*, 4 Ired. Eq., 320; *Wood* v. *Cone*, 7 Paige, 471.

Does the will in the present case otherwise direct? The circuit court held that it does, and accordingly decreed that the surplus of the proceeds of the sale of "The Grange," after satisfying the purposes of the conversion that remain effective, goes under the residuary clause to the sole distributee of Minnie McCarty, Dr. Carey; and in this view we concur.

"It seems to be well settled," says Redfield, "that a residuary bequest as to personal estate carries not only everything not attempted to be disposed of, but everything which turns out not to have been effectually disposed of, as void legacies and lapsed legacies. A presumption arises in favor of the residuary legatee, as to personalty, against every other person except the particular legatee. The testator is supposed to give away from the residuary legatee, only for the sake of the particular legatee." "The courts," he adds, "have for a long time inclined very decidedly against adopting any construction of wills which would result in partial intestacy, unless absolutely forced upon them. This has been done partly as a rule of policy,

perhaps, but mainly as one calculated to carry into effect the presumed intention of the testator. For the fact of making a will raises a very strong presumption against any expectation or desire on the part of the testator of leaving any portion of his estate beyond the operation of his will." 2 Redf., Wills, 115.

The author refers to a number of authorities, among them to the case of *Reynolds* v. *Kartright*, 18 Beav., 427, where it was said that everything that is ill given, falls into the residue. Indeed, nothing is better settled than that the residuary legatee nominated, generally is entitled, as residuary legatee, to whatever may fall into the residue after making the will, by invalid or ineffectual disposition, by lapse, by the incapacity of the specific or general legatee to take, or where property acquired subsequent to the will is thereby undisposed of. "I have always understood," said Sir William Grant, in *Dawson* v. *Clark*, 15 Ves., 409, "that a general residue of personal property comprehended everything not otherwise effectually disposed of by the will." And since the revisal of 1849 we have had a statute in Virginia, which puts devises of real estate on the same footing in this particular with legacies of personalty. Code, sec. 2524; 2 Lom. Ex'ors (2d ed.), 307.

In *Miars* v. *Bidgood*, 9 Leigh, 361, it was said : " There are many cases to show that property not intended to pass under a residuary clause, as where it is given *to charitable uses void by the statutes of mortmain,* or where the legacy lapses, or where the specific legatee cannot claim in consequence of fraud practiced on the testator, does yet go to the residuary legatee. The cases of *Cambridge* v. *Rous*, 8 Ves., 14; *Bland* v. *Lamb*, 5 Madd., 412, are of the same character. Sir John Leach, in the case of *Bland* v. *Lamb*, observed that the question is *not what the testator had in his contemplation, but what the words he has used will embrace according to their ordinary signification,* which must prevail unless qualified by other expressions in the instrument; and Lord Eldon, in afterwards affirming the decree, remarked, in allusion to this rule, that it has sometimes

operated directly contrary to the intention of the testator, but notwithstanding has been allowed to prevail."

These authorities are sufficient to show the extensive operation which the courts ordinarily give to a residuary bequest; and the reason is obvious. When a man makes his will, the presumption, as already remarked, is that he intends thereby to dispose of his whole estate, especially where the will contains a general residuary clause, and hence very strong and special words are required to show that the testator intended the residuary bequest to have a limited effect, and thus to rebut the presumption in favor of the residue. *Smith's Ex'or* v. *Smith,* 17 Gratt., 268; 2 Jarm., Wills, 762.

There are no words sufficient to show such an intention on the part of the testator in the will before us. It is true a defeasible fee in " The Grange," was given by the first clause of the will to the testator's adopted daughter, Miss McCarty, and that the will directs that in the event of her dying without issue, the land shall be sold, and the proceeds of the sale disposed of for the purposes mentioned. But that does not effect the comprehensive and unequivocal terms used in the residuary clause, already quoted.

It is very evident that the testator did not intend to die intestate as to any portion of his estate, and, taking the whole of the will together, it is obvious that his intention was to give by the residuary clause, *all* of his estate not disposed of by the preceding clauses of the will, although he may not have contemplated a failure, total or partial, of the purposes for which a conversion of the land into money was directed.

In short, we are of opinion that, construing the language of the will in the light of the principles already adverted to, the decree of the circuit court is right, and must be affirmed.

DECREE AFFIRMED.