## Richmond.

PRISON ASSOCIATION OF VIRGINIA v. RUSSELL'S ADMINISTRATOR.

103    563
106    724

March 9, 1905.

Absent, Cardwell, J.

1. WILLS—*Residuary Clause—Residue of a Residue.*—Where a testator, by his will, after certain specific bequests, gives to one person all the residue of his estate, both real and personal, of every kind whatsoever, and by a subsequent codicil undertakes to give a part of the residuum to another person, but the latter gift is void, or fails to take effect, the person designated as residuary legatee in the will takes the whole residuum. A residuary legatee not only takes what is not otherwise effectually disposed of by the will, but also what the will attempts ineffectually to dispose of, and which from any cause lapses or is void, except where the residuary clause itself, or some part of it, fails to become effectual, in which case it is called a residue of a residue, and passes to the next of kin. This is not a case of a gift of a part of a residuum to one person and part to another, and failure of the latter.

2. WILLS—*Construction—Partial Intestacy—Presumption—Position of Residuary Clause.*—The presumption is that every testator intends to dispose of his whole estate, and this is especially true where the will contains a general residuary clause, and very strong and special words will be required to rebut this presumption. The position of the residuary clause in the will does not affect the construction to be placed on the will. The intention of the testator is to be gathered from the will read as a whole, and, when such intention is ascertained, effect will be given to it if lawful.

Appeal from a decree of the Chancery Court of the city of Richmond, in a suit in chancery, wherein the appellee, Russell's

administrator, was the complainant, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*Stiles, Powers & Stiles,* for the appellant.

*Overton Howard* and *James E. Heath,* for the appellees.

KEITH, P., delivered the opinion of the court.

Testatrix died leaving a will dated April 12, 1890, which; together with a codicil dated May 9, 1898, was duly admitted to probate in the Chancery Court of the city of Richmond in February, 1902. The will and codicil are as follows:

"I, Adeline Pitt Russell, do make, constitute and appoint this my last will and testament, hereby revoking all other wills and testaments and writings in the nature of wills and testaments heretofore made by me, and particularly my will made some years ago and now in the possession, as I believe, of A. M. Keiley. I revoke that will because of certain conditions therein, which, owing to circumstances which have since arisen and which could not be then foreseen, might possibly defeat my chief object in making a will; and I believe that the purpose of that will can be better accomplished by this. I therefore revoke that will and all other wills heretofore made by me, and make this my last will and testament.

"My jewelry, silver, wearing apparel, &c., I give and bequeath to the person whose name will be found in a memoranda amongst my papers, stating what I give and to whom.

"All the residue of my estate, both real and personal, of every kind whatsoever of which I may die entitled, seised or possessed, I give, devise, and bequeath to the Prison Association

of Virginia, to use in establishing or in aiding in establishing anywhere within the Commonwealth of Virginia a reformatory, house of correction, workhouse or other institution of like aim and character for such criminals, youthful offenders and persons convicted of petty crimes, under the age of twenty-one years, as the courts and magistrates of the Commonwealth of Virginia may see fit to commit to such institution, with full power to said Prison Association of Virginia, or to its Board of Directors to use any of my said estate in kind for said reformatory or other institution of like aim and character, or, if in the judgment of the said Prison Association, or of its Board of Directors, it seem better to sell any or all of my said estate, real or personal or both, then authority is hereby conferred upon said Prison Association of Virginia or its Board of Directors to sell the same and to use the proceeds, principal and interest, in establishing and maintaining, or in aiding to establish and maintain, a reformatory, workhouse, or house of correction, or other institution of like aim and character anywhere within the limits of the Commonwealth of Virginia, for such criminals under the age of twenty-one years as the courts and magistrates of the State of Virginia may see fit to commit to said institution.

"Witness my hand this 12th day of April, in the year of our Lord, 1890.

"ADELINE PITT RUSSELL."

(Codicil.)

"By will, written by and in the possession of Mr. Overton Howard, of this city, the date of said will not being now remembered, I left all the property belonging to me at the time of my death to the Prison Association, or Reformatory School at Laurel, Va., I desire now to add this codicil to said will:   I

had purposed leaving a bequest to the Mechanics' Institute at Richmond, Va., but as there is a move on foot to change the title of that institution, I hereby give and bequeath to Rt. Rev. Augustine Van De Vyver, Roman Catholic Bishop of Richmond, Va., or his successor in that office, the sum of six ($6,000) thousand dollars, for the purpose of establishing an orphan asylum for negro female children in Richmond, Va., the said asylum to be conducted by the Sisters of the Holy Family (Colored Sisters) of New Orleans, Louisiana; and I do this in loving memory of my old black mammy and daddy, and the other servants who have belonged to me in the past. As a memento of my affection, I give one ($100) hundred dollars to each of the following gentlemen: To Howard T. Vaughan, of Norfolk, Va.; to Rev. Herbert M. Hope, of Petersburg, Va.; to William O. Hope, of Portsmouth, Va; to Mrs. Russell Tyer Barrett, of Newport News, Va.; I also give one ($100) hundred dollars, my diamond ear rings, broach, large cluster ring, ruby ring and long watch chain, and to her child, Tyer Barrett, my silver mug; to Mrs. Emma Vaughan I give the diamond and emerald ring I wore constantly; to Mrs. Herbert M. Hope, of Petersburg, Va., the enamelled solitaire diamond ring and the short watch chain, and to Mrs. William O. Hope my cameo, cat's eye ring and watch. I have left sealed instructions with Miss Ellen M. Keiley as to the disposition to be made of my wearing apparel and furniture. To Katie, daughter of Wm. O. Hope, my large emerald and diamond ring.

"ADELINE PITT RUSSELL."

The bill in this case was filled to obtain a judicial construction of this will. All interested were made parties, and by its decree, which is before us for review, the Chancery Court of the city of Richmond held that the $6,000 legacy given to the Roman Catholic Bishop of Richmond, or his successor in office,

was void, and from that feature of the decree there has been no appeal.

The Chancery Court was further of the opinion that the testatrix, with respect to the void legacy, had died intestate, and that it passed to her next of kin.

The Prison Association appealed from that decision, and its contention is, first, that as as there was no express revocation of the will by the codicil, and the disposition made by the codicil having become ineffectual by reason of the incapacity to take of the legatee therein named, it will not be allowed to take effect as a revocation. In other words, that "the only idea and intent ever entertained by the testatrix of revoking the will of April 12, 1890, was in immediate connection with and dependent upon the substitution of the new disposition of the $6,000 in place of the old, and that her general testamentary intent will be doubly and shockingly frustrated, if her new disposition fail to be effectuated while the old is held to have been revoked."

The second point presented in the argument is that the Prison Association is, by the terms of the original will, the residuary legatee of all the estate, real and personal, of every kind whatsoever, of which the testatrix died entitled, seised, or possessed, and that as residuary legatee it takes everything not otherwise effectually disposed of by the will.

We shall only deal with the latter of these two propositions.

By the will of April, 1890, testatrix disposed of certain articles of personal property, her jewelry, silver, wearing apparel, etc. "All the residue of my estate, both real and personal, of every kind whatsoever, of which I may die entitled, seised or possessed, I give, devise and bequeath to the Prison Association of Virginia," etc.

"No particular form of words is necessary to constitute a residuary legatee; any expression is sufficient from which the

testator's intention is discernible that the person designated shall take the surplus. Nor is it of controlling consequence that the clause is not the last of the disposing provisions, though such is the usual position. Woerner's American Law of Administration (2 Ed.), sec. 462.

"The residue is that part of a testator's estate not otherwise disposed of; hence a general residuary bequest carries with it everything not in terms disposed of, and with such exceptions as are pointed out in connection with the subject of lapsed and void legacies, everything not effectually or well disposed of, as well as lapsed legacies, unless a contrary intent clearly appear from the will." *Idem.*

"Such words as 'rest,' 'residue,' 'remainder,' are not indispensable to a residuary bequest of personal estate; but in various instances words and expressions quite informal have been given this effect, out of regard to the testator's obvious intention. A devise of this character has been held, agreeably to the intent of the will, to carry all the real estate, although "money" was the term employed. While the residuary clause in a will is usually the last of its disposing provisions, still, the fact that it is not the last, is not of controlling consequence as against the true intent to be gathered from the whole will; and where the words of a residuary clause are sufficient to constitute one a general residuary legatee it will not be readily assumed from other terms of the will that a less beneficial interest was intended." Schouler on Wills (3d Ed.), sec. 522.

It is hardly necessary to multiply authorities to show that by the will under consideration the Prison Association of Virginia was the residuary legatee of the testatrix. It is true that only a small portion of the property was specifically disposed of, but the whole scope of the final clause of that will discloses the intent of the testatrix, and uses apt words to convey her meaning. The Association is expressly named as the legatee of the *"residue"* of the entire estate.

It is said in 1 Jarman on Wills, at page 760: "It scarcely need be added that it is immaterial that the enumeration comprises trivial things only, and omits all the important items of the personal estate. To hold the contrary would involve the admission of evidence to prove what the testator's personal estate consists of at the date of the will, which we have before seen is inadmissible. The disposition of the judges of the present day is to adhere to the sound rule, which gives to words of a comprehensive import their full extent of operation, unless some very distinct ground can be collected from the context for considering them as used in a special and restricted sense."

In the first clause of the codicil, it is stated that "by will written by and in the possession of Mr. Overton Howard, of this city, the date of said will not being now remembered, I left all the property belonging to me at the time of my death, to the Prison Association," etc. That language was plainly used merely for the purpose of identifying the instrument to which she referred, and not for the purpose of changing the character of the disposition made by it. It had for its sole object the making of a bequest of $6,000 to the Roman Catholic Bishop of Richmond, and it left the Prison Association just where it found it—the residuary legatee of all her estate not otherwise disposed of. The bequest to the Catholic Bishop having failed, does it fall into the residuum or pass to the next of kin?

The contention of appellees is that the codicil undertook to dispose of a part of the residue, and this attempted disposition having failed, the bequest does not pass with the residuum, but goes to the next of kin.

The law on this subject is thus stated in Jarman on Wills, Vol. 1, p. 764: "When the disposition of an aliquot part of the residue itself fails from any cause, that part will not go in augmentation of the remaining parts, as a residue of the residue, but will devolve as undisposed of. In illustration of this well

settled rule it will suffice to mention the case of *Skrymsher* v. *Northcote,* 1 Swants. 566, where a testator gave his residuary estate equally between his two daughters; but in the event (which happened) of either of them dying and leaving no children, then out of the moiety of the one so dying he gave 500 pounds to H., and 'the remainder of that moiety' to the other sister. The testator revoked the gift of 500 pounds without making any fresh disposition of it, and Sir T. Plumer, M. R., held that it went to the next of kin. 'Residue,' he said, 'means all of which no effectual disposition is made by the will, *other than* the residuary clause. In the instance of a residue given in moieties to hold that one moiety lapsing shall accrue to the other, would be to hold that a gift of a moiety shall eventually carry the whole.' And this rule has been held to prevail, though the testator directed that in a certain event (which happened) the aliquot part should sink into the residue and be disposed of accordingly; this not being equivalent to saying it should belong to the other residuary legatees. But it is a mere question of intention, and in *Evans* v. *Field,* 8 L. J. (N. S.) 264, where a testatrix directed her executors to stand possessed of her residuary personal estate, after satisfying legacies, and also of so much of her personal estate the trusts whereof should fail, upon trust for divisions in elevenths, one share being separately given to each one of eleven named persons; one of these died before the testatrix, and it was held by Sir L. Shadwell, V. C., that the whole residue went to the other ten. He said the gift of the residue was in the first place among the eleven; but then the testatrix directed that so much of her personal estate, the trusts whereof should fail, should be disposed of according to the same trusts; and one share having lapsed, he thought the necessary effect of that direction was to make the residue divisible into ten parts instead of eleven."

It will be observed that Jarman uses the word "aliquot"

throughout this quotation. His whole text and the cases cited in support of it refer to residuary bequests where there is more than one residuary legatee, and the aliquot part given to one of such legatees fails. In such case, the part so failing goes, not in augmentation of the share or shares of the other residuary legatees, but passes as undisposed of to the next of kin. This clearly appears from the case of *Skrymsher* v. *Northcote, supra,* cited by Jarman, where the residuary estate was divided equally between the testator's two daughters, and the Master of Rolls held that the disposition of one of these moieties having become ineffectual it went to the next of kin. "For," he said, "residue means all of which no effectual disposition is made by the will, *other than* the residuary clause."

In 2 Redfield on the Law of Wills (3d Ed.), p. 115, it is said: "It seems to be well settled that a residuary bequest as to personal estate carries not only everything not attempted to be disposed of, but everything which turns out not to have been effectually disposed of, as void legacies and lapsed legacies. A presumption arises in favor of the residuary legatee, as to personality, against every other person except the particular legatee. The testator is supposed to give it away from the residuary legatee, only for the sake of the particular legatee."

In *Reynolds* v. *Kortright,* 18 Beav. 417, 427, it is said that everything which is ill-given falls into the residue.

"A general residuary bequest of personal estate, or of chattels real, carries to the residuary legatee not only such estate and such interests therein as the testator did not attempt to dispose of by his will, but also such as by lapse or otherwise have not in fact been effectually disposed of by him." *King* v. *Strong,* 9 Paige, 94.

*Morton* v. *Woodbury,* 153 N. Y. 243, 47 N. E. 243, is a case of much interest, and is pertinent to several questions considered in this case. It decides that "while the residuary clause in wills

is usually the last of its disposing provisions, still the mere fact that it is not the last is not of controlling consequence, and can have no effect except as it bears upon the question of the intent of the testator."

"In seeking to discover the intent of the testator, all the provisions of the will are to be treated as valid; and the fact that a certain provision is invalid is irrelevant in determining the intent."

"Where the words of a residuary clause are of themselves sufficient to constitute the person named therein a general residuary legatee, a clear expression in the will or special words of unmistakable import are required to render him the legatee of a particular, instead of a general, residue."

"Where there is a disposition of a part of the residue, and it fails, it will not go in augmentation of the remaining parts as a residue of a residue, but will devolve as undisposed of."

The quotations made are from the syllabus of the case, and we shall quote from the opinion in explanation of the last paragraphs. In support of the principle announced, the citation is made from Jarman on Wills which we have already quoted. The opinion says: "Where there is a disposition of a part of the residue, and it fails, it will not go in augmentation of the remaining parts as a residue of a residue, but will devolve as undisposed of. 'Residue means all of which no effectual disposition is made by the will, other than (by) the residuary clause. In the instance of a residue given in moieties, to hold that one moiety lapsing shall accrue to the other, would be to hold that a gift of a moiety shall eventually carry the whole.' (1 Jarman on Wills, 764, and cases cited). We find no such principle involved in this case. Here was a residuary clause, following which there was a provision by which the testatrix sought to dispose of a portion of her estate to hospitals and homes for women. This bequest was void, and, consequently,

lapsed, and as it cannot be properly regarded as a residue of a residue under the rule previously adverted to, it fell into the residuum and passed to the respondent as general residuary legatee."

If the legacy which failed in *Morton* v. *Woodbury* had been effectual, it would have, to that extent, diminished the interest of the residuary legatee; as it was void, it left the residuary legatee unaffected. And this is true of all void or lapsed legacies. The residuary legatee not only takes that which is not otherwise effectually disposed of by the will, but he takes that which the will attempts, ineffectually, to dispose of and which from any cause lapses or is void, except where the residuary clause itself, or some part of it, fails to become effectual, in which case it is denominated a residue of a residue, and passes to the next of kin.

The court, in *Morton* v. *Woodbury, supra,* refers to a class of English cases, "where the courts seem to have inferred that a bequest, in general terms, could not have the effect to carry the entire residuum, if particular portions were subsequently given to other persons, of which *Crichton* v. *Symes,* 3 Atk. 61, may be regarded as an illustration. This ground of inference is said by Redfield in his work on wills, to be 'entirely unsatisfactory; since the testator may have accidentally omitted some one whom he intended to remember in his will, until after the insertion of the residuary clause; or he may have chosen to begin his will by naming the residuary legatee.'" Adverting to the terms of the will in the case, the court further said: "It is plain that she intended to divert a portion of her estate from the general residuum, and to give it to homes and hospitals; but that fact is not controlling as in most cases of lapsed or void legacies such an intention exists. Nor do we think it denotes any intention on her part to make her executors or the objects of her bounty, her residuary legatees. We feel assured

that the fifth article of the testatrix's will contains no such special words, nor any such express terms, as to show an intention to exclude that portion of her estate from the residuum in case it should fail, as the rule relating to the subject requires."

In the case of *Skrymsher* v. *Northcote, supra,* the intention of the testator was manifest that the part of the residuum which failed should not augment that portion of the residuum which took effect. The two daughters of the testator were the objects of his bounty. It was the manifest purpose of the testator that each should have only a half, and it was tersely said by the court "to hold that one moiety lapsing shall accrue to the other, would be to hold that a gift of a moiety shall eventually carry the whole."

Redfield on Wills, Vol. 2, at page 119, discussing the proposition, that where a portion of the residuary bequest fails to become operative at the death of the testator in the manner provided, "the portion thus failing will not go to increase the other portions of the residuum, as a residue of a residue," shows very clearly the extent and limitations of this principle. Referring to *Skrymsher* v. *Northcote,* 1 Swanst. 566, which seems to be the leading case upon the subject, in which the residue was given in moieties, one of which lapsed, and it was held that the moiety lapsing should not accrue to the other, but would be held to pass to the next of kin as undisposed of property, he says: "It is not very apparent how the above reasoning may not apply with equal force to a gift of a residue, after particular legacies, which is really rendered as definite, by deducting the prior legacies, as if it had been expressed as one-half, or one-eighth, or any other definite proportion of the estate. And to adopt the principle that if all the particular legacies lapse, the residuary clause shall carry the whole estate, involves the same departure from the expressed intention of the testator, as where the residuary clause is divided into moieties, and one of

them fails, to let it go to the other.   But this distinction is based upon a presumed intention of the testator to give his whole estate to the residuary legatee, except as it shall be cut down by the deductions necessary to meet the particular legacies.   But in regard to the residuary bequest, where it is divided into distinct portions, no such presumption, as to increasing the several portions by the failure of the others, can so directly arise.   And it has been upon this presumed difference of probable intention that the distinction has been made; and, having been once established, upon grounds however uncertain, it should not now be disregarded, unless upon some satisfactory grounds arising out of the context of the will, or the extrinsic proof of circumstances proper to be received in aid of the construction."

We have examined text-writers and a number of adjudicated cases upon this subject, and all of them state the proposition substantially as it is presented by Jarman and Redfield; and all of the adjudicated cases are of the class of *Skrymsher* v. *Northcote, supra.*   Every case which we have been able to consult involved the construction of wills where the residuary bequest has been to two or more in aliquot parts, which has failed to become operative in the manner provided as to one or more of them.   As Redfield in the quotation just given remarks, the distinction as an original proposition is not clearly defined, but it rests upon the presumed intention, and having been established, "should not now be disregarded unless upon some satisfactory grounds arising out of the context of the will, or the extrinsic proof of circumstances proper to be received in aid of the construction."

In this connection see *Creswell* v. *Cheslyn*, 2 Eden's Chy. R. 123; *Sykes* v. *Sykes*, 4 Eq. Cas. 200; *Ford* v. *Ford*, 1 Swan. 431; *Waln's Estate*, 156 Pa. St. 194, 27 Atl. 59; *Smith* v. *Haynes*, 111 Mass. 346.

This court considered this general subject in construing the will of Nanus Rowan, in *Gallagher* v. *Rowan,* 86 Va. 823, 11 S. E. 121. The will in that case was as follows: "I give and bequeath to my beloved wife, Fanny P. Rowan, my estate called the 'Grange,' during her life, and at her death I give it to my adopted daughter, Minnie E. McCarty, and to her heirs forever. Should she die without issue, in that event it is to be sold in the customary way, on one, two and three years' credit. One-half of the proceeds of the land thus sold to be appropriated to the cause of domestic and foreign missions; the other half to be equally divided between the heirs of my brother, Gilbert Rowan, and the heirs of my four sisters," naming them. After making sundry bequests, the testator, by the fifth and last clause of his will, provided as follows: "All my remaining estate, real and personal, I give and bequeath to my dear wife during her life, and at her death to my dear Minnie McCarty." The bequest to foreign and domestic missions was held to be void for uncertainty, and the question was, to whom should the proceeds of the land thus bequeathed go; and it was held that it fell into the residuary fund and passed to the husband, as distributee of his wife, Minnie McCarty.

Among other cases cited by Judge Lewis in his opinion is that of *Miars* v. *Bidgood,* 9 Leigh, 361, where it is said: "There are many cases to show that property not intended to pass under a residuary clause, as where it is given to charitable uses void by the statutes of mortmain, or where the legacy lapses, or where the specific legatee cannot claim in consequence of fraud practiced on the testator, does yet go to the residuary legatee."

"These authorities," said the court in *Gallagher* v. *Rowan,* *supra,* "are sufficient to show the extensive operation which the courts ordinarily give to a residuary bequest; and the reason is obvious. When a man makes his will, the presumption, as

already remarked, is that he intends thereby to dispose of his whole estate, especially where the will contains a general residuary clause, and hence very strong and special words are required to show that the testator intended the residuary bequest to have a limited effect, and thus to rebut the presumption in favor of the residue."

"The courts have for a long time inclined very decidedly against adopting any construction of wills which would result in partial intestacy, unless absolutely forced upon them. This has been done partly as a rule of policy, perhaps, but mainly as one calculated to carry into effect the presumed intention of the testator. For the fact of making a will raises a very strong presumption against any expectation or desire, on the part of the testator, of leaving any portion of his estate beyond the operation of his will. Hence, where a general residuary bequest was accompanied with expressions favoring a more limited construction, and pointing only to a particular surplus, beyond the property specifically mentioned, it was nevertheless held to pass the residuum of his property at the time of his decease, as well that which he held at the date of the will as that afterwards acquired. Lord Eldon here said that was the general rule in regard to residuary bequests, to avoid partial intestacy, and that it required very special words to confine a residuary bequest to the property belonging to the testator at the date of his will."

The controlling purpose with courts in the construction of wills is to ascertain and give effect to the intention of the testator, if it be possible; and seeking for the intention of the testatrix in this case, it seems plain that she intended by her will to dispose of the whole of her estate, and not to die intestate with respect to any part of it. In other words, the conclusion to be deduced from a consideration of the particular will but strengthens the presumption which attaches to all wills. If the

codicil had constituted a part of the original testamentary paper, if it had preceded the residuary clause, there would have been no room for controversy. But, as we have seen, the position of the residuary clause has no effect upon the construction of the will. The whole will is to be read; it speaks, every line of it at the testator's death; it is to be construed in its entirety, and the intention of the testator gathered, not from any one part of it, but from the whole, and that intention, when ascertained, if it be lawful, governs and controls.

We are of opinion that there is error in so much of the decree of the Chancery Court as directs the $6,000 mentioned in the codicil to be paid to the next of kin. The decree must, therefore, be reversed, and the cause remanded, to be further proceeded in, in accordance with the views herein expressed.

*Reversed.*