## Wytheville.

## A. N. BLANKENBAKER, ET ALS., V. W. A. EARLY, ET ALS.

### June 15, 1922.

1. WILLS—*Presumption Against Intestacy—Rebuttal of Presumption —Residuary Legatees and Devisees.*—Where a party dies and leaves a will, the presumption is that he did not intend to die intestate as to any of his property; but where it is manifest from the express words of the will that a gift of the residuum is confined to a particular fund or description of property, or to some certain residuum, the residuary legatees will be restricted to what is thus particularly given.

2. WILLS—*Residue—Residue of a Definite Fund.*—Where definite portions of a definite fund are given to various persons and then the residue of that definite fund is given to some one else, the residue is as much a definite fund as any other part of the whole fund so given, and is not a residue in the ordinary meaning of that term.

3. WILLS—*Construction—Words Taken in Their Ordinary Sense.*—A testator is presumed to use the words in which he expresses himself in his will in their primary or ordinary sense, and in construing the will the words employed are to be taken in that sense, unless it is manifest from the context of the whole will that the testator intended to use them in a different sense.

4. WILLS—*Ambiguity—Statute of Descent and Distribution.*—Where an ambiguity exists in a will, unless there is a manifest intention to the contrary, the presumption is that the testator intended that his property should go in accordance with the laws of descents and distributions.

5. WILLS—*Construction—Intent Governs where Meaning is Plain.*— The primary consideration and rule of construction is to determine the intention of the testator from the language which he used. If the meaning of that language is plain, the will must be given effect accordingly. This rule is elementary, and to it all others are subordinate and subservient.

6. WILLS—*Construction—Doubt as to Meaning—Situation of the Testator.*—If there be doubt as to the meaning, then the auxiliary or subordinate rule to be first applied, and the one of most usefulness and importance, is for the court to place itself

as nearly as possible in the situation of the testator at the time of the execution of the will.

7. WILLS—*Construction—Partial Intestacy—Case at Bar.*—In the instant case, testator's will did not contain a general residuary clause, but simply a clause authorizing and directing the executor to sell all his real and personal property, with certain exceptions therein stated, and pay all his just debts and funeral expenses, and after paying certain legacies, "the remainder of the money to be equally divided between six of my children." The money so divided being clearly the money realized from such sale, the language quoted cannot include other lands or the money derived from the sale of other lands.

8. WILLS—*Construction—Partial Intestacy—Case at Bar.*—A testator conveyed certain land to his daughter, Virginia, the testator to remain in the possession of the land during his life, and at his death the daughter to take possession of the land, and should she die without issue, the land to revert and become a part of testator's estate to be divided as though it had never been deeded to her. By his will, the testator directed his executor to sell all his real and personal estate that he had not "*deed*" to his children, and that the money derived from such sale and remaining after payment of all just claims against his estate and the satisfaction of two specific legacies, to be divided between six of his children, naming them, including his daughter, Virginia.

*Held:* That the land in which the daughter, Virginia, had a life estate was not disposed of by the will, but at her death passed under the law to the heirs of the testator.

Appeal from a decree of the Circuit Court of Madison county construing a will.

*Reversed.*

The opinion states the case.

*John S. Chapman,* for the appellants.

*N. G. Payne* and *Edwin H. Gibson,* for the appellees.

WEST, J., delivered the opinion of the court.

On June 20, 1887, Richard Early, of Madison county, in consideration of one dollar and natural love and affection,

conveyed to his unmarried daughter, Virginia. S. Early, 186 acres of land in Madison county, the deed containing the following clause:

"But it is expressly stipulated and agreed between the parties that the said Richard Early is to retain peaceful and quiet possession of said land for and during his natural life, and that after his death (and not till then) is the said Virginia S. Early to take possession of the above-described tract of land, and should the said Virginia S. Early die without leaving a legal issue of her body, the land here deeded to her is to revert back and become a part of my estate, to be divided as though it had never been deeded to her, but if she leaves a child or children, then it goes to it or them, as the case may be."

He also deeded each of his other six children a farm.

On June 24, 1887, Richard Early made and executed his will, the second clause of which is in the following words:

"Item the 2nd: I want my executor, hereinafter named, to sell all my real and personal estate that I have not *deed* to my children in such manner and on such terms as will be to the interest of those to be benefited by it, and the money remaining after the payment of all just claims against my estate, I give to my daughter, Mary F. Blankenbaker, one dollar, to Robert E. Early, the sum of two hundred dollars, as I think the land I gave him is not worth as *as* I gave the other children, the remainder of the money to be equally divided between six of my children, viz: Ann E. Henshaw, Thomas W. Early, Elvira L. Fletcher, Martha V. Bohannon, Robert E. Early and Virginia S. Early. The land I have given to my daughter, Virginia S. Early, she does not get possession of until after my death, and she must not bring in any claims against my estate for the past or during my life for services rendered. She has a list of articles that are in my house that I do not claim, and my executor must not interfere with them."

In the spring of 1888, Richard Early departed this life, leaving surviving him his seven children, and the said will was probated on April 26, 1888, in the County Court of Madison county.   Upon his death, Virginia S. Early took possession of the 186-acre tract of land, and held and occupied it until some time in the year 1920, when she departed this life, "without leaving a legal issue of her body."

The bill in this case calls for the construction of item the second of the said will of Richard Early, deceased.

The circuit court held that Richard Early did not die intestate of the tract of land, containing 186 acres, conveyed by him to Virginia S. Early, with certain limitations and reversions, by deed dated the 20th day of June, 1887, but that the said tract of land, upon the death of said Virginia S. Early without issue, passed under item two of the said last will and testament of said Richard Early.   The case is here upon an appeal from that decree.

The lower court took the view that item two was, in effect, a general residuary clause, and caught up any undisposed of estate belonging to the testator and vested the title to the 186-acre tract in the children named in the second item of the will, subject to the deed, aforesaid, to Virginia S. Early.

[1] Where a party dies and leaves a will, the presumption is that he did not intend to die intestate as to any of his property; but where it is manifest from the express words of the will that a gift of the residuum is confined to a particular fund or description of property, or to some certain residuum, the residuary legatees will be restricted to what is thus particularly given. *Faison* v. *Middleton,* 171 N. C. 172, 88 S. E. 141.

In *Lane* v. *Patterson,* 138 Ga. 710, 76 S. E. 47, it was said, where land was devised to L. for her life, and at her death to her children then living, and a subsequent clause of the will devised "all other lands," "not heretofore dis-

posed of," that said last-mentioned clause did not dispose of any of the lands previously devised to L, nor any reversionary interest therein.

It is held in *Sink* v. *Sink*, 150 N. C. 444, 64 S. E. 193, that where, by direction of a will, certain real and personal property was sold to pay the testator's debts and certain legacies, and it was provided that any surplus which remained should go to the widow, this does not constitute her chief residuary legatee so as to vest in her the remainder of other property after her life estate therein.

[2] Where definite portions of a definite fund are given to various persons and then the residue of that definite fund is given to some one else, the residue is as much a definite fund as any other part of the whole fund so given, and is not a residue in the ordinary meaning of that term. 24 Am. & Eng. Ency. L. (2d ed.) p. 701.

[3] A testator is presumed to use the words in which he expresses himself in his will in their primary or ordinary sense, and in construing the will the words employed are to be taken in that sense, unless it is manifest from the context of the whole will * * * that the testator intended to use them in a different sense. 40 Cyc. 1396.

[4] Where an ambiguity exists in a will, unless there is a manifest intention to the contrary, the presumption is that the testator intended that his property should go in accordance with the laws of descents and distributions. 40 Cyc., p. 1412.

[5, 6] The primary consideration and rule of construction is to determine the intention of the testator from the language which he used. If the meaning of that language is plain, the will must be given effect accordingly. This rule is elementary, and to it all others are subordinate and subservient. If there be doubt as to the meaning, then the auxiliary or subordinate rule to be first applied, and the one of most usefulness and importance, is for the court

to place itself as nearly as possible in the situation of the testator at the time of the execution of the will. *Penick's Ex'or* v. *Walker,* 125 Va. 274, 278, 99 S. E. 559.

The defendants in error rely with great earnestness on the case of *Gallagher* v. *Rowan,* 86 Va. 823, 11 S. E. 121. The will in the case contains a general residuary clause, "all my remaining estate, real and personal, I give and bequeath to my dear wife * * *," and for that reason is not controlling in the instant case.

[7] Item two of Richard Early's will does not contain a general residuary clause, but simply a clause authorizing and directing the executor to sell all his real and personal estate, with certain exceptions therein stated, and pay all his just debts and funeral expenses, and after paying certain legacies, "the remainder of the money to be equally divided between six of my children." The money so divided being clearly the money realized from such sale, the language quoted cannot include other lands or the money derived from the sale of other lands.

In ascertaining the testator's intention, we look first to the language used by him.

The words, "that I have not *deed* (deeded) to my children," clearly except from the operation of the will all the lands he had deeded to his children, regardless of the stipulations contained in the deeds. This construction is strengthened by his subsequent reference, in the will, to the *land* he had deeded to his son, Robert E. Early, and the *land* he had deeded to his daughter, Virginia S. Early. The word "land" as used by him evidently means the fee simple estate therein, as he uses the same language in reference to the tract deeded to his daughter as he does in reference to the tract deeded to his son, which was an estate in fee simple; and these facts are sufficient to rebut the presumption that the testator intended to dispose of his entire estate. He evidently had in mind the deed to his daughter,

Virginia S. Early, and the possible reversion thereunder, and so worded his will as to exclude that reversion from its operation.

Not knowing his daughter would die without lawful issue, he preferred to die intestate as to the 186-acre tract rather than direct his executor to sell a contingent reversionary interest therein. And it would be a strained construction to hold that the testator intended to devise to his daughter, Virginia, an undivided one-sixth interest in the reversion in the 186-acre tract which could not take effect until her death, when he had already conveyed to her the life estate therein. If he had intended this result, he would have doubtless so provided in the deed itself, which was executed only four days before the will.

[8] We are of the opinion that the decree complained of is erroneous; that the land in which Virginia S. Early had a life estate was not disposed of by said will of Richard Early, but at her death passed under the law to the heirs of said Richard Early; and that the proceeds of the sale thereof should be divided amongst the heirs of said Richard Early according to their respective rights.

For the foregoing reasons, the decree under review will be reversed, and the decree entered here which should have been entered in the court below.

*Reversed.*

BURKS, J., dissenting:

I do not concur with the court in its construction of the will of Richard Early. By deed bearing date June 20, 1887, Richard Early conveyed to his daughter, Virginia S. Early, a tract of 186 acres of land. The deed concludes with the following paragraph:

"But it is expressly stipulated and agreed between the parties that the said Richard Early is to retain peaceful and quiet possession of said land for and during his natural

life, and that after his death (and not till then) is the said Virginia S. Early to take possession of the above-described tract of land, and should the said Virginia S. Early die without leaving a legal issue of her body, the land here deeded to her is to revert back and become a part of my estate to be divided as if it had never been deeded to her, but if she leaves a child or children, then it is to go to it or them, as the case may be."

He had conveyed other land to his other children about the same time. Four days after the deed to Virginia S. Early, to-wit, June 24, 1887, the testator executed his will, in the second clause of which he says: "I want my executor, hereinafter named, to sell all my real and personal estate that I have not *deed* to my children in such manner and on such terms as will be to the interest of those to be benefited by it." He then gives a pecuniary legacy of $1.00 to his daughter, Mary F. Blankenbaker, and $200 to Robert Early, and then says: "The remainder of the money to be equally divided between those of my children," naming them and including Virginia S. Early.

The courts incline very decidedly against adopting any construction which would result in partial intestacy unless absolutely forced upon them. This is especially true where the will contains a residuary clause, and very strong and special words are required to show that a testator did not intend to dispose of his entire estate. 2 Redfield on Wills, 115; *Gallagher* v. *Rowan,* 86 Va. 823, 11 S. E. 121; *Prison Association* v. *Russell,* 103 Va. 563, 49 S. E. 966.

In *Miars* v. *Bedgood,* 9 Leigh (36 Va.) 361, 370, it is said by Parker, J.: "There are many cases to show that property not intended to pass under a residuary clause, as where it is given to charitable uses, is void by the statute of mortmain (*Durour* v. *Matteaux,* 1 Ves. Sr. 320), or where the legacy lapses, or where the specific legatee cannot claim in consequence of fraud practiced on the testator (*Kennell* v.

*Abbott,* 4 Ves. 803), does yet go to the residuary legatee. The cases of *Cambridge* v. *Rous,* 8 Ves. 14; *Bland* v. *Lamb,* 5 Madd. 412, and several others cited in Roper on Legacies, chapter 24, section 1, are of the same character. Sir John Leech, in the case of *Bland* v. *Lamb,* observes that 'The question is not what the testator had in his contemplation, but what the words he has used will embrace according to their ordinary signification, which must prevail unless qualified by other expressions in the instrument.' Lord Elden, in afterwards affirming the decree, remarks in allusion to this rule, that it has sometimes operated directly contrary to the intention of the testator, but, notwithstanding, has been allowed to prevail." No particular words are necessary to constitute a residuary legacy. In the will in the case in judgment, after giving specific legacies, the testator directs how the *remainder* of the money is to be divided.

In looking at clause 2 of the will, we find that the testator directs his executor to "sell *all* of my real and personal estate that I have not *deed* to my children." What he directed to be sold was his estate in all of the property, real and personal, that he had not deeded. He did not forbid him to sell the lands which he had conveyed, but he was to sell his estate in the lands that he had not conveyed to his children. He had just four days before this reserved an estate in the land conveyed to his daughter, Virginia, and provided that, in the event that she left no issue, the land was "to revert back and become a part of my estate, to be divided as though it had never been deeded to her. The interest reserved by him in this deed was a part of his estate which he had not deeded, and when, by his will, he directed all of his real and personal estate to be sold, he must have included the estate reserved by him in the land conveyed to his daughter, Virginia. At all events, as said by Sir John Leech in the quotation above, the question is not what the testator had in his contemplation, but what

the words he has used will embrace according to their ordinary signification, which must prevail.   It seems to me that the words used in the will, according to their ordinary signification, carry with it the estate reserved in the land conveyed to his daughter.   The will under consideration presents very strong evidence that the testator did not intend to die intestate as to any portion of his estate, real or personal.   He had conveyed lands to his several children, and to his daughter, Virginia, he had conveyed only a certain interest or estate in a tract of land, providing that under the contingency named in that deed, the land deeded to her should revert back and become part of his estate as fully as if it never had been deeded to her.   Except as to the lands he gave to his other children, and the estate in the tract conveyed to his daughter, the testator directed the sale of all his real and personal estate.   He did not die intestate as to any portion thereof, and he directed how the proceeds should be divided, and even if he did not have in mind the results of the distribution directed by him upon the death of his daughter, Virginia, without issue, still the words used by him carry a disposition of the remainder interest in that tract of land, and should be given effect.