## Richmond

WILMA POWELL, ET AL.

v.

SHIRLEY T. HOLLAND, ET AL.

January 21, 1983.

Record No. 801168.

Present: All the Justices.

*Joshua Pretlow, Jr. (Carl E. Easton, Jr.; Pretlow, Pretlow & Moore, P.C.,* on brief), for appellants.

*J. Edward Moyler, Jr.; James E. Rainey (Moyler, Moyler, Rainey & Cobb,* on brief), for appellees.

POFF, J., delivered the opinion of the Court.

We are asked to review a decree which construed the will of Pattie Barnes Holland (Pattie) to devise a fee simple estate in certain real property to her husband, Hardy J. Holland (Hardy).

The subject property is an undivided 1/9 interest in the "Jones property" which Pattie inherited from Hendricks T. Jones in 1927. Pattie's holographic will, dated September 3, 1946, and admitted to probate shortly after her death in 1956, provided as follows:

I make this my last will
I give to my husband Hardy Holland my lot on the corner Linden *Ae* and West *Wasington* St Suffolk
I also give him all of my house *hole* and *kichen* furniture *exsep* the *brases* in front room they go to my sister Lizzie Pierce
I also *dirck* him to pay the town of Suffolk 75 dollars for *petfild* care *Her Gum* lot in *semery* and put up a stone in our lot I *dreck* him to pay 1 *hunded* to my church *Holled baptis* church in *Holled* if he does not *espose* of my *propty* while he living after his death it *gose* to my *aries*
I *leve* him my *admertit* without Bond
                                    Pattie Barnes Holland

In 1980, following the death of Jones' widow, the Jones property was sold under a decree of partition. A question arose concerning distribution of that portion of the proceeds of sale attributable to the share Pattie owned. The appellees,[1] heirs of Hardy (who had died intestate in 1958), petitioned the court for an interpretation of Pattie's will. At trial, the appellees contended that her will contained a residuary clause devising the subject property to Hardy and that the interest he took passed to them under former Code § 64-1, *et seq.,* the laws of descent and distribution in effect

---

[1] Shirley T. Holland, J. H. Holland, Mary H. Kelley, Virginia H. Brown, Frances Holland, Waverly N. Holland, Ivey H. Edwards, Marie H. Lee, Laura H. Bowen, Evelyn H. Carey, Nancy H. Joyner, John T. Holland, Richard S. Holland, Raymond H. Holland, Betty Lou H. Cordier and Barbara H. Salsbury.

when Hardy died. The appellees further argued that the remainder over to Pattie's "aries" was void and that Hardy had acquired a fee simple interest under Pattie's will.

Ruling that Pattie "intended to dispose of all of her property and did so by her will", and that her will devised Hardy a fee simple interest in the subject property, the chancellor entered a final decree awarding the funds in issue to the appellees.

Pattie's heirs at law are collateral kindred. The appellants, her heirs and certain successors in interest to her heirs,[2] argue on brief that Pattie's will "does not contain a residuary clause, general or specific, and the will does not dispose of her entire estate, but only those items enumerated in the will." In such case, appellants assert, the subject property, which was not specifically devised in the will, descended to Pattie's heirs.

The parties agree that Pattie's holographic will was properly admitted to probate. They disagree whether, considering the will as a whole, the language "if he [Hardy] does not espose of my propty while he living after his death it gose to my aries" constitutes a testamentary disposition of all the testatrix's property not specifically devised or bequeathed in her will to others.

The dispute arises from a collision between two rules of testamentary construction. The appellees rely upon the presumption against partial or total intestacy, the appellants upon the presumption that a decedent did not intend to disinherit his heirs.

■ The appellants argue that "public policy would dictate" that the presumption against disinheritance should prevail. As Pattie's heirs at law, they say, they are "the natural recipients of [the] decedent's bounty"; and, to uphold the presumption against intestacy, they contend, would be to favor "strangers to Pattie Holland, *i.e.* the heirs of her husband, Hardy" and thus to subvert public policy fixed by statute.

But the natural object of Pattie's bounty was her husband.[3] Pattie had no direct descendants; her heirs are collateral kindred. Criticizing the presumption against disinheritance as "feudal and

---

[2] Wilma Powell, Evelyn Daughtrey, Willie E. Powell, Robert L. Baker, Ruby Barnes, Edith Barnes, S. J. Smith, Jr., Marjorie S. Thacker, Gene Smith, Ruth S. Accamando, Peggy S. Riddick, Jacquelyn S. Nassef, Helen S. Mizelle, Godwin Smith, Marjorie M. Smith, Virtley A. Smith, J. Spafford Timberlake, Jr., John S. Timberlake, III.

[3] It is interesting to note that, in 1956, the General Assembly changed its public policy perspective by elevating surviving spouses from fouth to second place, above collateral kindred, in the order of intestate succession. Acts 1956, c. 109; *see also* Acts 1982, c. 304.

. . . akin to the law of primogeniture", this Court has approved the principle that " '[a]s among testator's collateral relatives or strangers, favoring presumptions carry little or no weight against the testator's apparent meaning.' 1 Schouler on Wills (6th ed.), 885." *Neblett* v. *Smith,* 142 Va. 840, 850, 128 S.E. 247, 250 (1925). Hence, the appellants' public policy argument fails for want of its premise.

Yet, the appellants contend that the presumption against disinheritance must prevail in this case because the language of Pattie's will is insufficient to constitute a testamentary disposition of her residuary estate. The sufficiency standard they invoke is found in *Sutherland* v. *Sydnor,* 84 Va. 880, 881-82, 6 S.E. 480, 481 (1888), quoted with approval in *M. E. Church* v. *Brotherton,* 178 Va. 155, 160, 16 S.E.2d 363, 365 (1941):

> "The law has provided a definite successor to the estate in the absence of a testamentary disposition, and the heir is not to be disinherited unless by express words or necessary implication."

*See also Jones* v. *Brown,* 151 Va. 622, 629, 144 S.E. 620, 622 (1928); *Blankenbaker* v. *Early,* 132 Va. 408, 412, 112 S.E. 599, 600 (1922).

Insisting that Pattie's will fails that test, the appellants underscore the word "necessary". They quote from *Coffman* v. *Coffman and al.,* 85 Va. 459, 461, 8 S.E. 672 (1888), where this Court said that, in order to justify a finding of disinheritance by necessary implication, "the intention of the testator must be so apparent that an intention to the contrary cannot be supposed, for otherwise the implication is not a necessary one." But the appellants overlook the *Coffman* court's explication of its definition. A "mere slight probability" is not a necessary implication; "[i]t must not rest upon conjecture"; but "[n]either is it required that the inference should be absolutely irresistible." *Id.* at 462, 8 S.E. at 673. "According to Lord Mansfield, necessary implication is that which clearly satisfies the court what the testator meant by the words he used." *Id.* at 461, 8 S.E. at 672.

Courts are asked to construe wills precisely because their language appears to be subject to different interpretations. If the words used are free of all doubt, a court has no occasion to determine what the author meant. When the words are arguably am-

biguous, adversary parties draw conflicting inferences, perhaps colored by self-interest. The relative merits of the inferences urged must be weighed and the conflict resolved by a disinterested arbiter. A judge must determine what is only arguably implied and what is necessarily implied.

In the appellants' view, an implication is necessary only if it is absolute and preclusive of all others. Reaffirming the definition in *Coffman,* we reject that view. We agree with Lord Mansfield that an implication is "necessary" if the words chosen by a testator satisfy the judge asked to construe them what the testator intended.

■ We turn now to the presumption against intestacy upon which the appellees rely. Unlike the law in England, "[i]n America, the law does not favor intestacy; rather it favors the right of a donor to dispose of his  property at death as he chooses, even if at the expense of his heirs at law." *Bauserman* v. *DiGiulian,* 224 Va. 414, 418, 297 S.E.2d 671, 674 (1982). "When a man makes a will, the presumption, in the absence of evidence to the contrary, is that he intended thereby to dispose of his whole estate. Accordingly, where two modes of interpretation are possible, that is preferred which will prevent either total or partial intestacy." *Honaker* v. *Starks,* 114 Va. 37, 39, 75 S.E. 741, 742 (1912).

The reasoning underlying this presumption is succinctly stated in *McCabe* v. *Cary's Ex'r.,* 135 Va. 428, 433-34, 116 S.E. 485, 487 (1923):

> The only reason anyone can have for making a will is to change the devolution of his property from that prescribed by the statutes of descent and distributions. Hence there is a strong presumption that the testator intended to dispose of his entire estate, and courts are decidedly averse to adopting any construction of a will which leaves a testator intestate as to any portion of his estate, unless compelled to do so. The judicial expositor, therefore, starts out with this presumption. [Citation omitted.]

*Accord, Baptist Home* v. *Mizell, Adm'r,* 197 Va. 399, 404, 89 S.E.2d 332, 335 (1955); *Arnold* v. *Groobey,* 195 Va. 214, 224, 77 S.E.2d 382, 387 (1953); *Bradshaw* v. *Bangley,* 194 Va. 794, 801, 75 S.E.2d 609, 613 (1953); *Neblett* v. *Smith,* 142 Va. at 847, 128

S.E. at 249; *Prison Association* v. *Russell,* 103 Va. 563, 576-77, 49 S.E. 966, 971 (1905); *Gallagher & Als.* v. *Rowan's Adm'r & Als.,* 86 Va. 823, 825-26, 11 S.E. 121, 122 (1890).

■ The two rules of construction invoked by the parties rest upon presumed intent. Both are derivative of and accessory to the paramount rule of testamentary construction, *viz.,* that courts must give effect to what appears to be the intention of the testator unless to do so would offend some rule of law.

> All rules with reference to wills, however, are subject to this, that the underlying principle always is that in the construction of wills the intention of the testator, if it is legal and can be determined, is controlling. All of the refinements of the law must yield to the power of the testator to dispose of his property as he desires. When this intention, which is the guiding star, is ascertained and can be made effective, the quest is ended and all other rules become immaterial.

*Wornom* v. *Hampton N. & A. Inst.,* 144 Va. 533, 541, 132 S.E. 344, 347 (1926) (citation omitted).

In our examination of the language Pattie chose to express her intention, we find a passage from an old case instructive:

> In the construction of wills, the first enquiry is into the meaning of the testator. This is the animating spirit, the essence, the soul, of the will. The words are the clothing, the mere vehicle used, to convey his ideas. When we once ascertain the intention of the testator, that is the governing principle, and must prevail, unless it violate some rule of law. . . . There is nothing technical about a will; no set form of words necessary. They are often written . . . by persons who, wholly ignorant of forms, use their own homely and awkward style to express their ideas; and if the language, however uncouth, be intelligible, and the meaning, when gathered, be lawful, it must be carried into effect.

*Land, &c.* v. *Otley,* 25 Va. (4 Rand.) 213, 216 (1826).

■ Since there is no extrinsic evidence bearing upon the question of the testatrix's intent, we look to the four corners of her will. There, we see that Pattie made a specific devise of the Suffolk lot and a specific bequest of her "house hole and kichen furniture" to her husband, Hardy, and a specific bequest of the

"brases" to her sister, Lizzie Pierce. She appointed Hardy her "admertit" and directed him to make cash payments to "the town of Suffolk" and to "Holled baptis church". Pattie made no mention whatever of any of her husband's relatives and none of her own except her sister. Hardy, her husband for more than three decades when she wrote her will, and the only member of her immediate family, was indisputably the focus of her testamentary intent.

It is true that Pattie's language, "homely and awkward" as it is, did not expressly grant the residue of her estate to Hardy. But, by indirection, she granted him unqualified power to "espose of my propty". "[H]e to whom is given the absolute power over an estate, acquires thereby the absolute property". *Burwell's Ex'ors* v. *Anderson, Adm'r &c.,* 30 Va. (3 Leigh) 348, 356 (1831). And the word "propty" is certainly broad enough to include Pattie's undivided interest in the Jones property. *See Robinett* v. *Taylor,* 121 Va. 583, 590, 93 S.E. 616, 618 (1917).

The appellants ask us to infer that Pattie intended the devolution of the subject property to be governed by the statutes of descent and distribution. Finding nothing on the face of her will which fairly supports that inference,[4] we hold that the language in dispute necessarily implies her intent to grant the residue of her estate to her husband with absolute power of disposition.

■ In an alternative argument, the appellants contend that the chancellor "erred in holding that the remainder over to the heirs of Pattie Barnes Holland was void." They acknowledge that a remainder following a grant of absolute power of disposition is void for repugnancy and uncertainty under the rule in *May* v. *Joynes,* 61 Va. (20 Gratt.) 692 (1857), and its progeny, and they do not claim that the remainder over to Pattie's heirs is validated by

---

[4] The appellants suggest that the inference they urge is strengthened by the doctrine of *ejusdem generis.* Specifically, they say that, under this doctrine, "[t]he 'propty' of which Hardy Holland could dispose is limited to those items specifically mentioned earlier in the will, even though the word property is broad enough to possibly cover other items." The appellants give the doctrine too much sway. " 'The ejusdem generis principle, as applied to the interpretation of wills, is subject to certain limitations. It is only a rule of presumption and must yield to the testator's intention, as expressed in the whole instrument.' " *Arnold* v. *Groobey,* 195 Va. at 226, 77 S.E.2d at 389. Here, the doctrine is altogether inapposite, "because that doctrine does not permit a reference to be made to other clauses of the will, giving specific property to different persons", *Miars and Others* v. *Bedgood Ex'or of Fulgham,* 36 Va. (9 Leigh) 361, 371 (1838), that is, the doctrine applies only when the specific and general references are contained in the same clause.

Code § 55-7. *See Mowery* v. *Coffman,* 185 Va. 491, 495, 39 S.E.2d 285, 287 (1946) (statute validates remainder only "where the first taker is given an *express estate for life,* coupled with the absolute power of disposition"); *accord Pigg* v. *Haley,* 224 Va. 113, 120, 294 S.E.2d 851, 856 (1982); *Borum* v. *National Bank,* 195 Va. 899, 910, 80 S.E.2d 594, 600 (1954). Rather, the appellants assert that the common law rule does not apply and that the remainder is valid because Pattie did not give Hardy "absolute power of disposition over her whole estate." His power of disposition, they say, was restricted to his lifetime and limited to his authority "as administrator . . . to pay the bequests that the testator wished to be taken care of".

But we have construed Pattie's will to vest Hardy with absolute power of disposition, extending to the entirety of her residuary estate. Hence, we hold that the remainder over to Pattie's heirs is void for repugnancy and uncertainty, and we uphold the chancellor's ruling that Hardy acquired a fee simple interest in the subject property and that Hardy's heirs are entitled to the proceeds of sale.

Finding no error in the court below, we will affirm the decree.

*Affirmed.*